**Nos. 24-1048, 24-1477**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

LAWRENCE P. KALBERS,

Plaintiff-Appellee,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

Defendant-Appellant.

VOLKSWAGEN AG,

Intervenor-Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Central District of California

———————————

## OPENING BRIEF FOR APPELLANT
## UNITED STATES DEPARTMENT OF JUSTICE

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

E. MARTIN ESTRADA
  *United States Attorney*

DANIEL TENNY
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

STATEMENT OF JURISDICTION ........................................................3

STATEMENT OF THE ISSUE...............................................................4

PERTINENT STATUTES AND REGULATIONS ...................................5

STATEMENT OF THE CASE.................................................................5

    A.    Legal Background ...........................................................5

    B.    Factual and Procedural Background .................................6

SUMMARY OF ARGUMENT.............................................................. 12

STANDARD OF REVIEW .................................................................. 15

ARGUMENT ...................................................................................... 15

Rule 6(e) Prohibits Disclosing the Millions of Records Produced in Response
    to a Grand Jury Subpoena........................................................ 15

    A.    Rule 6(e) Prohibits Disclosures That Would Compromise the
           Integrity of a Grand Jury Investigation .........................15

    B.    Disclosing the Nearly Six Million Documents at Issue in This
           Case Would Improperly Reveal Information About the Nature
           and Direction of the Grand Jury's Investigation ........................23

CONCLUSION .................................................................................. 34

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                **Page(s)**

*Bartko v. U.S. Dep't of Justice,*
    898 F.3d 51 (D.C. Cir. 2018) ...................................................................24

*Beckman Indus., Inc. v. International Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ...................................................................15

*Branzburg v. Hayes,*
    408 U.S. 665 (1972) ...................................................................16

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.,*
    441 U.S. 211 (1979) ...................................................................15, 17, 30

*Grand Jury Matter, In re,*
    682 F.2d 61 (3d Cir. 1982) ...................................................................20

*Grand Jury Proceedings, In re,*
    851 F.2d 860 (6th Cir. 1988) ...................................................................20, 26

*Grand Jury Proceedings Relative to Perl, In re,*
    838 F.2d 304 (8th Cir. 1988) ...................................................................20

*Grynberg v. U.S. Dep't of Justice,*
    758 F. App'x 162 (2d Cir. 2019) ...................................................................14, 19

*Hall v. Hall,*
    584 U.S. 59 (2018) ...................................................................4

*Labow v. U.S. Dep't of Justice,*
    278 F. Supp. 3d 431 (D.D.C. 2017) ...................................................................24

*Labow v. U.S. Dep't of Justice,*
    831 F.3d 523 (D.C. Cir. 2016) ...................................................................14, 19, 24, 27, 31

*Martin v. Consultants & Adm'rs, Inc.,*
    966 F.2d 1078 (7th Cir. 1992) ...................................................................20

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ...................................................................................33

*Optical Disk Drive Antitrust Litig., In re*,
   801 F.3d 1072 (9th Cir. 2015) .............................14, 18, 20, 22, 29

*Sealed Case, In re*,
   250 F.3d 764 (D.C. Cir. 2001) ..................................................................9

*SEC v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) (en banc) ..........................................19

*Sells, In re*,
   719 F.2d 985 (9th Cir. 1983) ..................................................................4

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) .............................................................6

*United States v. Dynavac, Inc.*,
   6 F.3d 1407 (9th Cir. 1993) ...........................13, 18, 21, 22, 29, 31

*United States v. Sells Eng'g, Inc.*,
   463 U.S. 418 (1983) .............................................................................5, 16

*United States v. Stanford*,
   589 F.2d 285 (7th Cir. 1978) ...............................................................27

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ................................................................................32

**Statutes:**

Act of July 30, 1977,
   Pub. L. No. 95-78, § 2(a), 91 Stat. 319, 319-20 ............................16

5 U.S.C. § 552(a)(3) ..............................................................................29, 32

5 U.S.C. § 552(b)(3) ...................................................................................4, 6

18 U.S.C. § 3231 ............................................................................................3

26 U.S.C. § 7602(a) ........................................................................29

28 U.S.C. § 1291 ............................................................................4

28 U.S.C. § 1331 ............................................................................3

**Rules:**

Fed. R. Crim. P. 6(e) .................................................................. 1, 3

Fed. R. Crim. P. 6(e)(2)(B) ......................................4, 5, 12, 13, 16, 30

Fed. R. Crim. P. 6(e)(3)(A) ............................................................5

Fed. R. Crim. P. 6(e)(3)(C) ............................................................5

Fed. R. Crim. P. 6(e)(3)(E) ............................................................5

Fed. R. Crim. P. 6(e)(3)(E)(i) .........................................................6

Fed. R. Crim. P. 6(e)(3)(F) ......................................................... 6, 10

Fed. R. Crim. P. 6(e)(3)(G) ......................................................... 6, 10

**Legislative Material:**

S. Rep. No. 95-354 (1977) ............................................................16

**Other Authority:**

1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (5th ed.),
Westlaw (updated Apr. 2023) ........................................................16

## INTRODUCTION

This case arises out of a request under the Freedom of Information Act (FOIA) for nearly six million documents that were produced by Volkswagen AG in response to a subpoena from a federal grand jury. In a related proceeding directly at issue here, the district court concluded that the public disclosure of these documents would not implicate the prohibition in Federal Rule of Criminal Procedure 6(e) on disclosure of any "matter occurring before a grand jury." In reaching that conclusion, the district court emphasized its beliefs that disclosing the millions of requested documents would not shed any light on the grand jury's investigation and that permitting withholding here would allow parties to undermine FOIA's goals by strategically producing documents to a grand jury.

That decision is erroneous on all levels. Public disclosure of the millions of documents that Volkswagen produced in response to a grand jury subpoena would plainly implicate Rule 6(e), because it would shed significant light on the scope and direction of the grand jury's investigation. Most obviously, releasing the requested documents could allow the public to infer that the grand jury was interested in investigating the subject matters—for example, the time periods, the custodians, and the specific conduct—encompassed by the documents. And those effects would be compounded by the universal scope of the request; disclosing the full range of documents produced by Volkswagen could allow the public to infer not only what the grand jury was investigating but also what the grand jury chose not to investigate. And

permitting any member of the public to leverage FOIA to access documents subpoenaed by a grand jury—documents that the public would otherwise have no right to access—would significantly undermine the interests protected by Rule 6(e), chilling witness cooperation, permitting potential interference in the grand jury process, and bringing unwarranted public scrutiny on third parties who are never charged.

The district court was also wrong to suggest that recognizing the applicability of Rule 6(e) in this case would allow parties to undermine FOIA by selectively providing documents to a grand jury. If the documents at issue here had not been produced to the government, they would not be even arguably subject to FOIA. They are thus distinct from documents that the government obtained in some other way, which may not be protected by Rule 6(e) merely because they had also been provided to a grand jury. For similar reasons, this case bears little resemblance to those in which private parties seek to shield from disclosure documents that they would otherwise be legally required to disclose by asserting that the documents have been produced to a grand jury; this case instead involves a direct inquiry into the grand jury's operations that cannot be reconciled with Rule 6(e).

Perhaps for those reasons, the district court failed to identify any decision of any court permitting disclosure in response to a FOIA request directed at documents produced in a response to a grand jury subpoena. To the contrary, courts have consistently held that Rule 6(e) prohibits the disclosure of such documents to a

2

member of the public without an independent right to access the documents. Particularly given the extremely broad scope of the request and the circumstances of this case, this Court should not be the first to break from the consensus of the courts of appeals. The district court's orders should be reversed.

## STATEMENT OF JURISDICTION

These appeals arise out of the district court's resolution of two petitions regarding the disclosure of grand jury materials that the United States filed under Federal Rule of Criminal Procedure 6(e). The petitions were instituted as collateral to underlying criminal cases in the Eastern District of Michigan—though the petitions were subsequently transferred to the Central District of California—as to which the district court had jurisdiction under 18 U.S.C. § 3231. If the petitions were considered as new matters, district court jurisdiction would lie under 28 U.S.C. § 1331 because the petitions present a federal question.

The district court referred the petitions to a Special Master and, on November 28, 2024, the Special Master issued a Report and Recommendation in which she concluded that the materials at issue were not protected by Rule 6(e). On February 9, 2024, the court entered an order overruling the United States' and VW's objections to the Report and Recommendation and thereby finally resolving the petitions. *See* 1-ER-3. On February 26, 2024, VW filed a timely notice of appeal from the district court's order with respect to one of the petitions. *See* 2-ER-63. And on March 8, 2024, the

3

United States filed timely notices of appeal from that order as to both petitions. *See* 2-ER-61; 2-ER-62.[1]

This Court has jurisdiction over these appeals under 28 U.S.C. § 1291. As this Court has explained, the resolution of a petition under Rule 6(e) is generally "a final decision and therefore immediately appealable." *In re Sells*, 719 F.2d 985, 988 (9th Cir. 1983) (quotation omitted). Although these petitions have been consolidated with a FOIA case that is still pending, a final judgment in one consolidated case is appealable even if other consolidated cases have not concluded. *Hall v. Hall*, 584 U.S. 59, 77-78 (2018).

## STATEMENT OF THE ISSUE

Lawrence Kalbers, the plaintiff in the consolidated case, filed a FOIA request that has been interpreted to cover nearly six million documents that Volkswagen previously produced in response to a grand jury subpoena. The government concluded that releasing those documents would improperly disclose a "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B); *see also* 5 U.S.C. § 552(b)(3). The district court determined that responding to Kalbers's FOIA

---

[1] Because this appeal arises from the final order resolving the petitions, the government's understanding is that the correct caption should be the consolidated captions of the two petitions—*United States v. Liang* and *United States v. Bauder*—and not the caption of the associated FOIA suit, *Kalbers v. U.S. Department of Justice*. The government has thus moved to amend the caption. *See* Mot. (May 15, 2021). Because that motion remains pending, the government has captioned this brief with the FOIA suit caption that is currently reflected on the docket.

request—and publicly disclosing millions of documents that the government received pursuant to a grand jury subpoena—would not disclose any matter occurring before the grand jury.

The issue presented is whether the documents produced in response to a grand jury subpoena are protected from disclosure under FOIA by Rule 6(e)'s general prohibition on disclosure of matters occurring before a grand jury.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Legal Background

**1.** Rule 6 of the Federal Rules of Criminal Procedure governs the conduct of grand jury proceedings. As particularly relevant here, Rule 6(e) "codifies the traditional rule of grand jury secrecy." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983).

Rule 6(e) generally prohibits all non-witness participants from disclosing any "matter occurring before the grand jury," "[u]nless these rules provide otherwise." Rule 6(e)(2)(B). In addition, the Rule enumerates the specific circumstances in which disclosure of grand jury materials is permissible. Some of those exceptions apply without need for a court order; for example, the Rule provides for disclosures to other federal attorneys or other federal grand juries, *see* Rule 6(e)(3)(A), (C). The Rule also provides that district courts have discretion to order disclosure of grand jury matters in five enumerated circumstances, none of which is present here. Rule 6(e)(3)(E).

5

**2.** As a result of Rule 6(e), the government generally may not disclose a matter occurring before the grand jury in response to a FOIA request. Instead, if disclosing records encompassed by a FOIA request would disclose such a matter, those records are properly withheld under FOIA's Exemption 3, which covers materials that are "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3). Although it is codified as a Rule of Criminal Procedure, Rule 6(e) "has been positively enacted by Congress" and therefore "counts as a statute for purposes of Exemption 3." *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007).

One circumstance in which Rule 6(e) permits a court to authorize disclosure of grand jury material is when such disclosure would be made "preliminarily to or in connection with a judicial proceeding." Rule 6(e)(3)(E)(i). If a party wishes to obtain authorization for disclosure of material under this provision, the party is required to file a petition "in the district where the grand jury convened." Rule 6(e)(3)(F). If disclosure is sought in connection with a "judicial proceeding in another district," the grand jury court generally "must transfer the petition to the other" district court. Rule 6(e)(3)(G).

### B.    Factual and Procedural Background

**1.** Following a grand jury investigation in the Eastern District of Michigan, the United States charged Volkswagen AG and a number of individuals with crimes generally related to a scheme in which VW "equipped certain vehicles with software to detect when the vehicle was being tested for compliance with EPA emissions

standards and to turn on full emissions controls only during that testing process." 2-ER-82. Volkswagen, one other company, and two individuals pleaded guilty to various charges, and a number of indictments remain pending. *See* 1-ER-5.

In response to the criminal investigation, "VW hired the law firm Jones Day to conduct an internal investigation and then to present factual evidence to the" Department of Justice. 1-ER-5 (quotation omitted). Jones Day collected nearly six million documents that were then "provided to the DOJ pursuant to a grand jury subpoena." 1-ER-5.[2] The record reflects that the produced documents were—with the exception of four pages—affixed with labels that read "FOIA Confidential – Produced Pursuant to Rule 6(e)" and were housed by the Department in a database with access restricted to the prosecutors working on the criminal case and their support staff. *See* 2-ER-173.

**2.** In 2018, Lawrence Kalbers, an academic who is interested in the criminal case against VW, filed a request under the Freedom of Information Act with the Department of Justice. That request sought, as relevant here, the disclosure of "all factual evidence presented by Jones Day" to the Department. 1-ER-6 (quotation

---

[2] The Department of Justice initially estimated that VW produced approximately 6.5 million documents, and that is the figure cited in the Special Master's Revised Report and Recommendation. *See* 1-ER-5. The Department later determined that it had actually received approximately 5.9 million records from VW (and that using the de-duplication methods "routinely used for processing FOIA requests" would reduce that number to approximately 5.6 million records). *See* 2-ER-73-74. Those differences are not relevant for purposes of this appeal.

omitted). The Department concluded that all responsive records were exempt from disclosure. After exhausting administrative procedures, Kalbers filed a lawsuit in the Central District of California seeking to compel disclosure of the requested records.

In that FOIA suit, the Department moved for summary judgment on the grounds that its search was adequate and that the approximately 250 responsive records the government had identified—which were primarily documents that VW's counsel had discussed at meetings with prosecutors—were properly withheld on a number of grounds, including, as relevant here, Rule 6(e) as incorporated into Exemption 3. The district court denied that motion. The court concluded that the FOIA request was reasonably interpreted to encompass all of the millions of documents produced to the United States by VW's counsel—not merely the 250 documents discussed in the meetings with counsel. Thus, the court concluded that the government's search was inadequate. *See* 2-ER-293-97. Because the court determined that the search was inadequate, it did not address whether any of the claimed exemptions—including Exemption 3—permitted withholding of the documents. *See* 2-ER-297 n.7.

Following the district court's denial of summary judgment, the parties submitted briefing regarding the appropriate format for an index of withheld documents. In the course of resolving the parties' dispute on that issue, the district court reiterated that it interpreted the FOIA request to cover "all records and materials from the" VW-related investigations that were "transmitted by Jones Day to

8

the [Department] on VW's behalf," without any exclusion for documents "produced in response to a grand jury subpoena." 2-ER-272.

In addition, in the same order, the court conveyed its view that the government's attempt to rely on Rule 6(e) was "overly broad and based on an unreasonable interpretation of Rule 6(e)." 2-ER-273. According to the court, applying Rule 6(e) in this context "would allow any party that is being investigated by a grand jury to undermine the goals of FOIA" by "simply turning over all documents" to the grand jury. 2-ER-273. And the court emphasized that there was no evidence that any specific documents were presented to the grand jury and that nothing in the FOIA request sought "to discover what the grand jury actually did or did not have before it." 2-ER-274. Finally, the court suggested that the invocation of Rule 6(e) was "troubling" because there did not appear to be an ongoing grand jury investigation and that any documents "that existed prior to the issuance of a grand jury subpoena" were categorically excluded from Rule 6(e) protection. 2-ER-274-75.

**3.** After the district court articulated that view, the government was concerned that the court might order the production of documents under FOIA without the government's having received proper authorization to disclose those documents under Rule 6(e). *Cf. In re Sealed Case*, 250 F.3d 764, 768-70 (D.C. Cir. 2001) (holding that the government violated Rule 6(e) when it provided grand jury material to a different district court in a sealed, ex parte filing "without prior authorization from the grand jury court"). To avoid that situation, the government filed petitions

pursuant to Rule 6(e)(3)(E)(i) in connection with two criminal cases—one of which involved Volkswagen as a criminal defendant—in the Eastern District of Michigan, where the grand jury in question had been empaneled. *See* 1-ER-6-7; *see also* 2-ER-200-03; 2-ER-204-07.

As explained, Rule 6(e)(3)(E)(i) permits a court to authorize disclosure "of a grand-jury matter" in "connection with a judicial proceeding"; a "petition to disclose a grand-jury matter" under that authority must be "filed in the district where the grand jury convened," Rule 6(e)(3)(F). In the government's petitions, it referred to this authority, but instead of requesting that the district court authorize disclosure, it requested that the district court in the Eastern District of Michigan enter "a non-disclosure order" to make clear that the grand jury subpoenaed material should not be disclosed in connection with the FOIA suit. *See, e.g.*, 2-ER-201-02.

The Eastern District of Michigan then transferred the petitions to the Central District of California, where Kalbers's FOIA suit was already pending. *See* Rule 6(e)(3)(G); *see also* 2-ER-198; 2-ER-199. The district court in the Central District of California consolidated the petitions with the already-pending FOIA suit and referred the petitions to a Special Master that the court had appointed in connection with the FOIA suit. *See* 2-ER-193.

**4.** In November 2021, the Special Master issued a Report and Recommendation in which she recommended that the petitions be denied and that the court refuse to enter a non-disclosure order. In the Special Master's view, releasing

10

the nearly six million documents at issue would not improperly "reveal the nature, scope, or direction of the grand jury's inquiry," both because the volume of documents "makes any link between these records and the determination of the nature or direction of the investigation tenuous" and because the "records were prepared in the ordinary course of business." 2-ER-136-37.

After the United States and VW objected to the Report and Recommendation, the district court referred the matter back to the Special Master for reconsideration. *See* 2-ER-100. The Special Master issued a Revised Report and Recommendation in November 2023. As relevant to these appeals, the Special Master again concluded that the subpoenaed documents were not protected from disclosure by Rule 6(e). *See* 1-ER-32.

At the outset, the Special Master stated that preexisting records "created for independent purposes" that are later subpoenaed by a grand jury are not protected by Rule 6(e) unless the disclosure of the materials would "compromise the secrecy of the grand jury process." 1-ER-15-22 (quotation omitted). Applying that standard to the nearly six million documents encompassed by the FOIA request, the Special Master concluded that nothing in the record suggested that disclosing those materials would compromise grand jury secrecy, for two reasons. First, she believed that the volume of materials would "render[] it virtually impossible for the public to glean any information about the grand jury's investigation or deliberation." 1-ER-22. Second, she concluded that there was "no showing that there is something inherent in the

11

documents—e.g., witness lists, summaries of grand jury testimony, copies of subpoenas, and the like—that would reveal any information about the grand jury." 1-ER-22. On that basis, the Special Master recommended that the petitions be denied. 1-ER-32.

The United States and VW both objected to the Report and Recommendation. On February 9, 2024, the district court entered a summary order stating "that the Special Master did not err or abuse her discretion" in concluding that the Rule 6(e) petitions should be denied. 1-ER-3. Thus, the court overruled the parties' objections to the Report and Recommendation and directed the parties to confer regarding a process for reviewing and producing responsive records in Kalbers's underlying FOIA action. 1-ER-3.

These appeals followed.

## SUMMARY OF ARGUMENT

Kalbers's FOIA request seeks the public disclosure of nearly six million records that were produced by VW in response to a grand jury subpoena. But Rule 6(e) generally prohibits the government from disclosing any "matter occurring before the grand jury." Rule 6(e)(2)(B). That prohibition prevents the government from disclosing information that could compromise the integrity of the grand jury process. Releasing all of the millions of records that VW produced in response to the grand jury's subpoena would plainly compromise the integrity of the grand jury's investigation by allowing the public to learn substantial information about the nature

12

and direction of the grand jury's investigation. That disclosure is prohibited by Rule 6(e), and the district court's contrary decision should be reversed.

**A.** The text and purposes of Rule 6(e) make clear that the government is generally prohibited from disclosing information that would compromise a grand jury investigation, such as by shedding light on the nature and direction of that investigation. Rule 6(e) codifies the longstanding rule that grand jury proceedings are secret; it imposes a flat prohibition against the disclosure of "a matter occurring before the grand jury" "[u]nless these rules provide otherwise." Rule 6(e)(2)(B). The plain text of that Rule applies to forbid the disclosure of information that reveals the individuals, time periods, and specific crimes that the grand jury was investigating.

The purposes of Rule 6(e) confirm that conclusion. Rule 6(e) serves various interests, including preventing tampering with the grand jury process, protecting the privacy interests of those who are implicated in the grand jury's investigation, and avoiding the prospect that public disclosures could chill witnesses' full and frank cooperation. Publicly disclosing information about the nature and direction of the grand jury's investigation would undermine each of those interests.

All relevant precedent likewise confirms that Rule 6(e) does not permit the disclosure of subpoenaed documents when that disclosure would shed light on the grand jury's investigation. Although this Court permitted the disclosure to the Internal Revenue Service (IRS) of specific subpoenaed records in *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411-14 (9th Cir. 1993), in doing so, this Court made clear that the

13

relevant question focused on whether the disclosure would compromise the integrity of the grand jury process. And this Court later confirmed that touchstone in *In re Optical Disk Drive Antitrust Litigation*, 801 F.3d 1072, 1077 (9th Cir. 2015). Other courts of appeals have similarly confirmed that Rule 6(e) prohibits disclosing documents that would shed light on the nature and direction of the grand jury's investigation, including in the context of addressing the government's withholding of such documents in response to FOIA requests. *See, e.g.*, *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016); *Grynberg v. U.S. Dep't of Justice*, 758 F. App'x 162, 164 (2d Cir. 2019).

**B.** Releasing the millions of records sought by Kalbers's FOIA request would plainly divulge information about the nature and direction of the grand jury's investigation in violation of Rule 6(e). Multiple mutually reinforcing considerations confirm that result. First, it is clear from context and from express labels that the documents here were produced in response to a grand jury subpoena. Second, the release contemplated here would be particularly revelatory because Kalbers has sought all of the documents that Jones Day produced on VW's behalf; releasing the full scope of produced documents would permit substantial reverse engineering of the contours of the grand jury's investigation. Third, information about the grand jury's investigation is especially likely to be revealed where, as here, Kalbers asserts no independent legal right to obtain the documents, but instead seeks to probe the

14

criminal process itself. FOIA does not provide a vehicle for doing that in general, and it particularly does not do so in the circumstances of this case.

## STANDARD OF REVIEW

The question whether disclosure of the requested materials would constitute the disclosure of a matter occurring before the grand jury is a pure question of law; as such, it is subject to de novo review, *see Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992).

## ARGUMENT

### RULE 6(E) PROHIBITS DISCLOSING THE MILLIONS OF RECORDS PRODUCED IN RESPONSE TO A GRAND JURY SUBPOENA

#### A.    Rule 6(e) Prohibits Disclosures That Would Compromise the Integrity of a Grand Jury Investigation

The text and purposes of Rule 6(e), as well as all relevant precedent, confirm that the Rule prohibits the disclosure of information that would compromise the integrity of a grand jury investigation, including by shedding light on the nature and direction of the investigation. Thus, the government may not properly release documents that would directly reveal, or would permit the public to infer, such information about a grand jury—including, for example, information about the particular individuals, time periods, and conduct that a grand jury investigated.

**1.** "Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979). Rule 6(e) "codifies" that

15

"traditional rule of grand jury secrecy." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983). Most importantly, Rule 6(e) imposes a flat prohibition against the disclosure of "a matter occurring before the grand jury" "[u]nless these rules provide otherwise." Rule 6(e)(2)(B). That language, enacted directly by Congress in 1977, reflects a "general rule of nondisclosure." S. Rep. No. 95-354, at 7 (1977); *see* Act of July 30, 1977, Pub. L. No. 95-78, § 2(a), 91 Stat. 319, 319-20.

The plain meaning of Rule 6(e) prohibits the disclosure of information that would reveal the "nature and direction of the grand jury's investigation"—including, for example, "the types of crimes being examined" and "the identity of the target and subjects of the investigation." 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 107 (5th ed.), Westlaw (updated Apr. 2023). The grand jury has an important "investigatory function" to "determin[e] whether a crime has been committed and who committed it"—a task that requires "a thorough and extensive investigation" to "run down" "every available clue" and "examine[] the evidence" collected. *Branzburg v. Hayes*, 408 U.S. 665, 701-02 (1972) (quotation omitted). The contours of the grand jury's investigation—including the conduct and evidence being examined and the potential crimes and individuals being investigated—constitute the core of the grand jury's important work. The disclosure of information or documents that would reveal those contours and shed light on the nature and direction of the investigation thus plainly constitutes the revelation of a "matter occurring before the grand jury" generally prohibited by Rule 6(e).

16

The purposes of Rule 6(e) confirm that conclusion. The traditional secrecy rules codified in Rule 6(e) protect the integrity of the process, preserve the privacy interests of those involved, and avoid chilling witnesses from "com[ing] forward voluntarily, knowing that those against whom they testify would be aware of that testimony." *Douglas Oil Co.*, 441 U.S. at 218-19.

These interests require protecting information about the nature and scope of the grand jury's investigation. Most obviously, revealing the particular conduct or individuals that the grand jury is investigating may permit tampering with the investigation by allowing individuals under investigation to flee, destroy evidence, or attempt to influence grand jurors. And revealing such information after the grand jury's investigation has concluded would improperly intrude on the privacy interests of third parties, particularly as to uncharged conduct and unindicted individuals. Indicating that someone was once a target of, or even involved in, grand jury proceedings can be harmful to them, as can the disclosure of otherwise private information that the grand jury—but not the public—has a right to see.

Moreover, the potential for the future disclosure of such information may impair the grand jury's investigation by chilling prospective witnesses' willingness to cooperate fully. For example, a potential witness may fear that the public disclosure of information will reveal—or allow others to infer—various things that the witness would rather keep secret, such as the fact of the witness's cooperation, the nature of

17

the underlying conduct being investigated, or other sensitive information contained in the witness's testimony or documents.

**2.** All relevant precedent confirms that Rule 6(e) prohibits the disclosure of materials that would compromise the integrity of the grand jury investigation, including by revealing information about the nature and direction of that investigation.

As an initial matter, this Court has repeatedly confirmed in the context of requests based on a freestanding entitlement (for example, an independent administrative summons or civil subpoena) that application of Rule 6(e) requires focusing on whether revealing the documents in question would compromise the secrecy of the grand jury's investigation. Thus, this Court has explained that the touchstone of the relevant inquiry is whether disclosing the business records would improperly reveal information about the grand jury process: "Rule 6(e) does not prohibit [the] release" of subpoenaed documents if they are "sought for [their] own sake rather than to learn what took place before the grand jury, and if [their] disclosure [would] not compromise the integrity of the grand jury process." *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411-12 (9th Cir. 1993); *see also In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072, 1077 (9th Cir. 2015) (The application of Rule 6(e) in the context of pre-existing records that may have been presented to a grand jury "focus[es] on whether the integrity of the grand jury's deliberative process would be

compromised by disclosing the pre-existing documents." (alterations and quotations omitted)).

Although this Court has not previously faced the circumstances at issue here, where the party seeking the grand jury documents has no claim of entitlement to access the documents other than that they are in the government's possession, other circuits have applied principles similar to those announced in *Dynavac* to analogous circumstances. For example, in addressing whether Rule 6(e) required the withholding of grand jury subpoenaed records in response to a FOIA request, the D.C. Circuit recently explained that Rule 6(e) prohibits the disclosure of materials that "would reveal something about the grand jury's identity, investigation, or deliberation." *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016); *see also SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc) (explaining that Rule 6(e) prohibits disclosure of, among other things, information regarding "the strategy or direction of the [grand jury's] investigation").

Similarly, the Second Circuit recently upheld the government's withholding of grand jury subpoenaed materials in response to a FOIA request on the ground that disclosing the materials could reveal "a protected aspect of the grand jury's investigation," such as "the scope" of the investigation, the sources from which "the Government sought its evidence" or "who produced" such evidence, and "what criminal actions were being investigated." *Grynberg v. U.S. Dep't of Justice*, 758 F. App'x 162, 164 (2d Cir. 2019) (quotation omitted). And other courts have similarly focused

19

their attention in applying Rule 6(e) on whether the disclosure in question would reveal information about the grand jury investigation's scope or direction—such as the conduct or individuals targeted by the grand jury. *See, e.g.*, *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1097 (7th Cir. 1992) (focusing on whether disclosure might "reveal the identities of targets" of the investigation); *In re Grand Jury Proceedings*, 851 F.2d 860, 867 (6th Cir. 1988) (focusing in part on whether disclosure of documents would "reveal the nature, scope, or direction of the grand jury inquiry"); *In re Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 307 (8th Cir. 1988) (the disclosure of documents that would reveal "the direction of the grand jury's investigation and the names of persons involved" would "fall[] within Rule 6(e)(2)" (quotation omitted)); *In re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982) (explaining that Rule 6(e) covers "[b]oth the direct and indirect disclosure of information" that "may reveal what occurred before the grand jury"); *see also Optical Disk Drive*, 801 F.3d at 1077 (acknowledging that, although this Court has not adopted the precise test adopted by other circuits, it does "focus[] on whether the integrity of the grand jury's deliberative process would be compromised by disclosing the pre-existing documents" (alterations and quotation omitted)).

As noted, this Court has not addressed a circumstance in which a member of the public sought documents that had been subpoenaed by a grand jury based on the government's possession of those documents. This Court's cases instead reflect the

20

distinct circumstances of an effort to secure—based on a separate claim of entitlement—documents that happen to have been presented to a grand jury.

In analyzing those cases, this Court made clear, as explained, that the proper Rule 6(e) inquiry focuses on whether "the integrity of the grand jury's deliberative process would" "be compromised by the[] disclosure" of the documents. *Dynavac*, 6 F.3d at 1414. And the Court emphasized features of those cases that made them unlikely to compromise the grand jury's deliberative process. This Court has observed, in particular, that often the integrity of the grand jury process will not be compromised by the release of documents that were created independently of a grand jury investigation and are sought based on a claim of entitlement unrelated to the grand jury's investigation. Thus, in *Dynavac*, this Court held that the IRS could enforce summonses for a company's business records even though the records had previously been produced in response to a grand jury subpoena and remained in the government's possession. *Id.* at 1411-14.

That holding followed from the Court's conclusion that enforcement of the IRS summonses would not compromise the integrity of the grand jury process. That was so because the summonses were directed to the private entities implicated in the IRS investigation and sought specific business records identified by their content, "without mention of the grand jury." *Dynavac*, 6 F.3d at 1414. In addition, in that case, the company itself had revealed that the specific "business books and records for the years in question" sought by the summonses "had been previously disclosed to the

21

grand jury." *Id.* at 1410. Thus, the enforcement of the summonses would not have revealed anything about which records had been produced to the grand jury.

In those circumstances, the Court determined that Rule 6(e) did not prevent enforcement of the summonses. In reaching that conclusion, this Court surveyed, and declined to adopt, various formulations of the relevant standard that other courts of appeals have employed in the context of assessing under Rule 6(e) requests for records that had previously been produced to a grand jury. *Dynavac*, 6 F.3d at 1412-14. Nonetheless, the Court made clear—as explained—that (like the other circuits), it believed the relevant inquiry must focus on the extent to which "the integrity of the grand jury's deliberative process would" "be compromised by the[] disclosure" of the documents. *Id.* at 1414; *see also id.* at 1412 n.2 ("[W]e allow for the possibility in a rare and unusual case of making a showing that learning *which* documents were subpoenaed by the grand jury may disclose the grand jury's deliberative process.").

This Court applied similar principles in *Optical Disk Drive*, where a party sought to enforce a civil subpoena for tape recordings and transcripts of conversations that had been part of a criminal antitrust investigation for use in its own civil antitrust suit. The Court confirmed again that the application of Rule 6(e) substantially "focus[es] on whether the integrity of the grand jury's deliberative process would be compromised by disclosing the pre-existing documents." *Optical Disk Drive*, 801 F.3d at 1077 (alterations and quotation omitted). In that case, as in *Dynavac*, the documents

22

were sought in circumstances unlikely to reveal information about the grand jury investigation.

As noted above, in the circumstances of a case like this one, where the seeker of documents has no independent claim of entitlement to the documents and the involvement of the grand jury is thus much more central to the request, the inquiry articulated in *Dynavac* and *Optical Disk Drive* does not differ in any significant way from the focus of the other courts of appeals: the relevant question is simply whether revelation of the documents would compromise the integrity of the grand jury investigation. This Court should therefore reach the same result here as those courts did in analogous circumstances.

### B.  Disclosing the Nearly Six Million Documents at Issue in This Case Would Improperly Reveal Information About the Nature and Direction of the Grand Jury's Investigation

Kalbers requested through FOIA all of the documents that Jones Day produced on Volkswagen's behalf to the Department of Justice in connection with a criminal investigation. As explained, that request has been construed to encompass nearly six million documents that VW produced in response to a grand jury subpoena. But disclosing the six million requested documents would likely reveal substantial information about the nature and direction of the grand jury's investigation. That disclosure is prohibited by Rule 6(e), and the district court's judgment to the contrary should be reversed.

23

**1.** In the context of this case, disclosing the millions of records encompassed by Kalbers's FOIA request would reveal protected information about the grand jury's investigation, for three mutually reinforcing reasons.

*First*, and perhaps most obviously, disclosing the requested documents would reveal the specific documents that were produced in response to the grand jury's subpoena. As the D.C. Circuit recently explained in a similar context, a significant disclosure of documents that the government has acquired through a grand jury subpoena may constitute the disclosure of protected information under Rule 6(e) where the documents reflect their nexus with the grand jury. Although the requisite inquiry is context-specific and depends on all relevant circumstances, the fact that particular documents "reveal that they were subpoenaed by a grand jury" is a strong indicator that disclosure of those documents may reveal information about the nature and scope of the grand jury's investigation. *Labow*, 831 F.3d at 530; *see also Labow v. U.S. Dep't of Justice*, 278 F. Supp. 3d 431, 443-45 (D.D.C. 2017) (district court on remand stating that revealing the "returns on subpoenas, if identified as such on the document," could disclose "something critical about the grand jury's investigation"). Thus, if documents are "identifiable as materials sought by the grand jury," then they likely are protected by Rule 6(e). *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 73 (D.C. Cir. 2018).

Moreover, it is particularly significant that Kalbers's FOIA request not only seeks documents that the government would not possess but for a grand jury

subpoena but also explicitly describes the documents that Kalbers is seeking in terms of their relationship to VW's document production. That is, rather than requesting—for example—specific VW-related records that Kalbers believes the Department possesses or even all records that the Department maintains on VW (however acquired or generated), Kalbers's request is defined in relevant part in terms of the records "presented by" VW's counsel to the Department in the context of the grand jury investigation. 1-ER-6 (quotation omitted). In addition, the record reflects that—with the exception of four pages—the millions of documents encompassed by Kalbers's FOIA request were produced to the government with labels that read "FOIA Confidential – Produced Pursuant to Rule 6(e)." *See* 2-ER-173. Thus, disclosure of the documents would necessarily reveal the nature of documents produced in response to a grand jury subpoena—and, as such, presumably reveal the shape of the grand jury's investigation. The government thus cannot disclose those documents without improperly disclosing a matter occurring before the grand jury.

That feature of Kalbers's request makes it markedly different from the summonses at issue in *Dynavac* and the civil subpoena at issue in *Optical Disk Drive*. In those cases, the requesters sought specific records identified by their content rather than seeking records identified by the fact of their production to the government. Thus, the requester was seeking information that happened to have been presented to a grand jury; the requester was not seeking information about which records had been produced in response to a grand jury subpoena. And disclosure of the records would

25

not have revealed any additional information about the nexus between the records and the grand jury.

*Second*, the improper disclosure of protected information about the nature and direction of the grand jury's inquiry would be acute here because of the extremely broad scope of Kalbers's request. As explained, VW produced nearly six million documents to the Department in response to the grand jury subpoena, 1-ER-5; *see also* 2-ER-73, and the district court has construed Kalbers's FOIA request to encompass all of those documents, 2-ER-272.

But providing all of the documents produced in response to the grand jury subpoena would allow substantial reverse-engineering of the contours of the grand jury subpoena—and, by extension, the scope and nature of the grand jury's investigation. For example, the release of all documents subpoenaed by a grand jury could allow the recipient to learn the specific time periods that the grand jury was interested in or the specific custodians or subject matters that the grand jury was investigating. And conversely, the absence of documents related to particular time periods—or custodians or conduct—may allow the recipient to infer the subjects that the grand jury had determined not to investigate.

Thus, courts have properly explained that the disclosure of large numbers of subpoenaed documents may permit "inferences about the nature and direction of the grand jury inquiry" when those documents are "considered in the aggregate and in their relationship to one another." *Grand Jury Proceedings*, 851 F.2d at 865; *see also, e.g.*,

26

*United States v. Stanford*, 589 F.2d 285, 291 n.6 (7th Cir. 1978) (noting that a "general request for all documents collected or received in connection with the investigation" "would be in effect a disclosure of the grand jury proceedings" (quotation omitted)). And fulfilling Kalbers's FOIA request, which seeks the disclosure of all of the millions of documents produced in response to the grand jury subpoena, would plainly disclose information about the nature and direction of the grand jury's investigation. In essence, the request seeks a large portion of the grand jury's case file in order to discern and potentially replicate the grand jury's work. The request thus strikes at the core of Rule 6(e)'s prohibition.

The D.C. Circuit's reasoning in a recent case involving the FOIA context illustrates the difference between explicitly seeking grand jury materials as such (or materials the government necessarily would not possess any other way) and seeking materials only tangentially implicating the grand jury. Where a plaintiff had submitted a FOIA request to the FBI seeking "any records about himself," the court held that releasing records in response to the question would not necessarily reveal protected Rule 6(e) information, even if those records had been subpoenaed by a grand jury. *Labow*, 831 F.3d at 526, 529-30. As the court explained, the plaintiff "did not request documents related to a grand jury; he sought documents about particular people." *Id.* at 529-30. Thus, it was "possible that, had the government released the documents" in response to the request, the plaintiff "would never have known that any of the documents had been subpoenaed by a grand jury." *Id.* at 530. By contrast, Kalbers's

27

request does not seek any records within the government's possession that relate to VW or any other specific topic; instead, he has specifically sought those records "presented by" VW's counsel to the Department. 1-ER-6 (quotation omitted). Thus, it would be impossible—even setting aside the labeling of the records—to respond to Kalbers's request without revealing the fact that any released records were produced by VW to the Department in the context of a grand jury investigation.

Nor is this concern ameliorated by Kalbers's belated suggestion in his briefing in the district court that he could voluntarily narrow his FOIA request to encompass only the approximately 1.3 million documents that "were tagged by the government in the course of its investigation." 2-ER-74-75; *see also* 1-ER-28 (discussing Kalbers's proposed limitation on his request). Even assuming that his later suggestion in briefing could bear on the proper resolution of the Rule 6(e) petitions, releasing the 1.3 million documents that were identified as of particular interest to the investigation only exacerbates the extent to which the disclosure may compromise the integrity of the investigation by revealing information about its nature and scope. And even the relatively more limited release of 1.3 million documents would plainly still permit substantial reverse-engineering of the bounds of the grand jury's subpoena.

*Third*, the Rule 6(e) concerns are heightened in this context because Kalbers has no independent legal right to obtain the documents he is requesting. The sole source of Kalbers's purported right to request the documents is FOIA. But of course, FOIA does not generally provide parties with any right to access a private entity's business

28

records; instead, FOIA provides a right of access only to agency records. *See* 5 U.S.C. § 552(a)(3). Thus, if the grand jury had never issued a subpoena to VW—and, thus, VW had never produced the relevant records to the government—Kalbers would inarguably have no legal entitlement to the documents.

That fact again differentiates Kalbers's request from the requests at issue in *Dynavac* and *Optical Disk Drive*. The *Dynavac* court repeatedly emphasized that the IRS was seeking the requested records "for legitimate purposes" unrelated to the grand jury and that "the IRS has a legitimate interest in the documents as part of its authority to assess civil tax liabilities." 6 F.3d at 1412, 1414; *cf.* 26 U.S.C. § 7602(a) (providing the IRS authority to "examine any books, papers, records, or other data which may be relevant or material" to a tax inquiry). Similarly, in *Optical Disk Drive*, the records in question were relevant to a pending civil antitrust suit and were sought through a subpoena issued in connection with that suit. 801 F.3d at 1074.

This case illustrates why the formulation of the request and its context are meaningful in resolving the Rule 6(e) question. Responding to a request that explicitly, or by implication, seeks information about the criminal process is far more likely to reveal information about the scope and focus of the grand jury's inquiries than responding to a request for information that happened to have been produced to a grand jury. If the IRS seeks, and obtains, business records "as part of its authority to assess civil tax liabilities," *Dynavac*, 6 F.3d at 1414, it is far less likely to learn anything about the scope of the grand jury's investigation than a requester examining the

29

criminal process. And relatedly, while *Dynavac* and *Optical Disk Drive* reflect appropriate skepticism about allowing private parties to use disclosure to a grand jury as a shield to avoid disclosure of documents to which a requester would otherwise have a legal right, the possibility that disclosure to a grand jury will itself cause documents to be subject to disclosure under FOIA threatens Rule 6(e)'s purpose of encouraging witnesses to provide the grand jury with "frank and full testimony," *Douglas Oil Co.*, 441 U.S. at 222.

Taken together, those three factors establish the impermissibility of disclosing the nearly six million documents covered by Kalbers's FOIA request. In the circumstances of this case, disclosing those documents—whose nexus to the grand jury is apparent both from context and from the face of the documents—would necessarily shed light on the nature and direction of the grand jury's investigation and thus would impermissibly disclose a "matter occurring before the grand jury." Rule 6(e)(2)(B).

**2.** The Special Master's, and the district court's, reasons for concluding to the contrary are unsound.

*First*, the Special Master's primary rationale for concluding that disclosing the nearly six million documents would not implicate Rule 6(e) was that the large volume of requested material would "render[] it virtually impossible" to "glean any information" about the grand jury. 1-ER-22. But this is not a context in which grand jury materials, not distinctly identifiable as such, might simply be mixed into a request

30

that only tangentially implicates them. *See Labow*, 831 F.3d at 529-30. Instead, as discussed above, the nexus between the records and the grand jury is plain. Indeed, in this context, the volume of requested material heightens, rather than ameliorates, the Rule 6(e) problem, because the release of *all* of the documents produced in response to the grand jury's subpoena would allow the public to infer substantial information about the time periods, individuals, and subjects that the grand jury was (and was not) investigating. *See supra* pp. 26-28.

*Second*, the Special Master and the district court both suggested that there was no indication that the requested documents would shed light on specifics of the grand jury's deliberations by revealing, for example, "witness lists" or "summaries of grand jury testimony." 1-ER-22; *see also* 2-ER-274. But to the extent that the Special Master and district court intended to suggest that Rule 6(e)'s protection is limited to the events that unfold in the grand jury room, that suggestion is incorrect.

As explained, this Court's cases—consistent with the text and purpose of Rule 6(e) and the caselaw of other circuits—make clear that Rule 6(e) protects "the integrity of the grand jury process" as a whole, *Dynavac*, 6 F.3d at 1412, including the nature and direction of the grand jury's investigation. *See supra* pp. 18-23. And for all of the reasons already explained, releasing the nearly six million documents requested by Kalbers (or the voluminous subset of tagged documents) would shed significant light on the scope and direction of the grand jury's investigation, *see supra* pp. 24-30, even assuming that those documents would not reveal specific information about

31

particular events inside the grand jury room. The government is thus not permitted under Rule 6(e) to disclose the requested documents.

*Third*, the district court has previously suggested that applying Rule 6(e) in this context would impermissibly "undermine the goals of FOIA" because parties could circumvent the statute by "simply turning over all documents" to the grand jury. 2-ER-273. But that suggestion is incorrect. A party could undermine FOIA only by rendering inaccessible under FOIA certain documents that would otherwise have been available to members of the public. Here, FOIA would have provided no right to obtain documents that had never been provided to the federal government at all, so VW's disclosure to the government in response to the grand jury subpoena did not reduce the universe of documents that are available under FOIA.

Indeed, it is anomalous to suggest that grand jury materials, as such, are properly subject to FOIA requests. The purpose of FOIA is to allow citizens "to know what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (emphasis and quotation omitted). To that end, FOIA provides a qualified right of access only to an agency's own records. *See* 5 U.S.C. § 552(a)(3). But here, the activities of the government—as distinguished from the activities of VW, as to whose documents FOIA confers no right to disclosure— that disclosing the materials at issue would reveal are the scope and nature of documents that the government obtained in response to a grand jury subpoena. That is precisely what Rule 6(e) forbids. And given the background of Rule 6(e)'s

32

prohibition, it would be particularly anomalous to suggest that the mere production of a private party's records to the grand jury automatically transforms those records into agency records covered by FOIA.

To allow private parties to obtain documents solely because they were provided to a grand jury, as Kalbers seeks to do here, would fundamentally subvert both FOIA and Rule 6(e). Rule 6 itself provides a reticulated framework describing the circumstances and procedures for sharing grand jury materials, and FOIA should not be read to displace that framework. *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general[.]"). While in some circumstances pre-existing documents obtained through a grand jury subpoena may be shared to satisfy some other purpose authorized by law, Congress has not indicated that a general interest in the workings of the grand jury provides a sufficient basis for disclosure, even though a general interest in the workings of other parts of the government has been deemed sufficient to justify a FOIA request.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

E. MARTIN ESTRADA
*United States Attorney*

DANIEL TENNY

*s/ Sean R. Janda*

SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*
*sean.r.janda@usdoj.gov*

May 2024

34

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellant states that it knows of no related case pending in this Court beyond these two consolidated cases.

*s/ Sean R. Janda*
Sean R. Janda

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,325 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda