Nos. 24-1048; 24-1477

# In the United States Court of Appeals for the Ninth Circuit

---

LAWRENCE P. KALBERS,
*Plaintiff-Appellee,*

v.

UNITED STATES DEPARTMENT OF JUSTICE,
*Defendant-Appellant,*

VOLKSWAGEN AG,
*Intervenor-Appellant.*

---

On Appeal from the United States District Court
for the Central District of California (No. 2:18-cv-08439)
Hon. Fernando M. Olguin

---

## BRIEF OF INTERVENOR-APPELLANT VOLKSWAGEN AG

---

MORGAN L. RATNER
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Suite 700
Washington, DC 20006
(202) 956-7500

ROBERT J. GIUFFRA, JR.
SUHANA S. HAN
ANDREW J. FINN
LESLIE B. ARFFA
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

*Counsel for Intervenor-Appellant Volkswagen AG*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Volkswagen AG states that it is more than 10% owned by Porsche Automobil Holding SE, which is a publicly held corporation.

# TABLE OF CONTENTS

*Page*

**INTRODUCTION** ................................................................ 1

**STATEMENT OF JURISDICTION** .................................. 7

**STATUTORY ADDENDUM** ............................................. 8

**STATEMENT OF THE ISSUE** ........................................ 8

**STATEMENT OF THE CASE** .......................................... 8

    A.    Factual Background .......................................... 8

    B.    Procedural History ........................................ 11

**SUMMARY OF ARGUMENT** ........................................ 19

**STANDARD OF REVIEW** .............................................. 23

**ARGUMENT** ..................................................................... 23

**RULE 6(E) EXPRESSLY PROTECTS FROM FOIA DISCLOSURE THE CONFIDENTIAL BUSINESS RECORDS THAT VOLKSWAGEN PRODUCED PURSUANT TO A GRAND JURY SUBPOENA** ...................................... 23

    A.    Rule 6(e) Codifies Enduring Grand-Jury-Secrecy Protections ...................................... 25

    B.    Rule 6(e) Shields Material Subpoenaed by the Grand Jury and Available to the Government Only Through It ............................................ 29

    C.    Rule 6(e) Protects Volkswagen's Confidential Business Records from Disclosure to Professor Kalbers and the Press .................................... 35

    D.    The District Court's Contrary Rule Is Wrong ............ 43

**CONCLUSION** .................................................................. 53

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Am. Fed'n of Gov't Emps., Loc. 2782* v. *U.S. Dep't of Com.,*
  632 F. Supp. 1272 (D.D.C. 1986) ........................................................ 31

*Augarten* v. *U.S. Dep't of Treasury,*
  1995 WL 350805 (D.D.C. May 22, 1995) ........................................... 34

*Bartko* v. *DOJ,*
  898 F.3d 51 (D.C. Cir. 2018) ............................................................... 40

*Borg* v. *Boas,*
  231 F.2d 788 (9th Cir. 1956) ............................................................... 26

*Brunetti* v. *FBI,*
  357 F. Supp. 2d 97 (D.D.C. 2004) ...................................................... 33

*Canning* v. *DOJ,*
  263 F. Supp. 3d 303 (D.D.C. 2017) .................................................... 33

*Church of Scientology Int'l* v. *DOJ,*
  30 F.3d 224 (1st Cir. 1994) ................................................................. 50

*Costello* v. *United States,*
  350 U.S. 359 (1956) ............................................................................. 26

*Dassault Systemes, SA* v. *Childress,*
  663 F.3d 832 (6th Cir. 2011) ............................................................... 32

*DOJ.* v. *Reporters Comm. for Freedom of Press,*
  489 U.S. 749 (1989) ............................................................................... 6

*Douglas Oil Co.* v. *Petrol Stops Northwest,*
  441 U.S. 211 (1979) ................................................................. 6, 28, 29

*Fund for Constitutional Gov't* v. *National Archives &*
  *Records Serv.,*
  656 F.2d 856 (D.C. Cir. 1981) ....................................................... 4, 32

*In re Grand Jury Disclosure*,
    550 F. Supp. 1171 (E.D. Va. 1982) ...................................................... 33

*In re Grand Jury Proceedings*,
    851 F.2d 860 (6th Cir. 1988) ........................................... 29, 35, 47, 49

*In re Grand Jury Subpoena*,
    825 F.2d 231 (9th Cir. 1987) .............................................................. 26

*In re Grand Jury Subpoena Duces Tecum*,
    797 F.2d 676 (8th Cir. 1986) .............................................................. 28

*In re Grand Jury Subpoenas*,
    472 F.3d 990 (8th Cir. 2007) .............................................................. 27

*Grynberg* v. *DOJ*,
    302 F. Supp. 3d 532 (S.D.N.Y. 2018) ........................................... 37, 41

*Grynberg* v. *DOJ*,
    758 Fed. Appx. 162 (2d Cir. 2019) ........................................... 3, 32, 49

*Hall* v. *Hall*,
    584 U.S. 59 (2018) ................................................................................ 5

*John Doe Corp.* v. *John Doe Agency*,
    850 F.2d 105 (2d Cir. 1988) .............................................................. 47

*Judicial Watch, Inc.* v. *Nat'l Archives and Records Admin.*,
    214 F. Supp. 3d 43 (D.D.C. 2016) ............................................... 34, 47

*Senate of Puerto Rico ex. rel. Judiciary Comm.* v. *DOJ*,
    823 F.2d 574 (D.C. Cir. 1987) ................................................ 39, 42, 43

*Kalbers* v. *DOJ*,
    22 F.4th 816 (9th Cir. 2021) .................................. 1, 2, 8, 9, 13, 14, 15

*Kortlander* v. *BLM*,
    816 F. Supp. 2d 1001 (D. Mont. 2011) .............................................. 33

*Labow* v. *DOJ*,
    278 F. Supp. 3d 431 (D.D.C. 2017) ................................................... 41

*Labow* v. *DOJ*,
  831 F.3d 523 (D.C. Cir. 2016) ........................................................... 41

*Leopold* v. *CIA*,
  987 F.3d 163 (D.C. Cir. 2021) ............................................................. 7

*Light* v. *DOJ*,
  968 F. Supp. 2d 11 (D.D.C. 2013) ..................................................... 33

*Lopez* v. *DOJ*,
  393 F.3d 1345 (D.C. Cir. 2005) ......................................................... 41

*M.K.* v. *DOJ*,
  1996 WL 509724 (S.D.N.Y. Sept. 9, 1996).......................................... 34

*Martinson* v. *DEA*,
  1997 WL 374803 (D.D.C. Feb. 13, 1997) ............................................ 33

*McAtee* v. *DHS*,
  2016 WL 4250267 (D. Mont. Aug. 10, 2016) ........................... 33, 8, 46

*McDonnell* v. *United States*,
  4 F.3d 1227 (3d Cir. 1993) ........................................................... 4, 32

*McKeever* v. *Barr*,
  920 F.3d 842 (D.C. Cir. 2019) ........................................................... 27

*McQueen* v. *United States*,
  179 F.R.D. 522 (S.D. Tex. 1998) .................................................. 35, 50

*Mont* v. *United States*,
  139 S. Ct. 1826 (2019)........................................................................ 31

*Peltier* v. *FBI*,
  218 Fed. Appx. 30 (2d Cir. 2007) ...................................................... 33

*Rehberg* v. *Paulk*,
  566 U.S. 356 (2012)............................................................................ 29

*SEC* v. *Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) ......................................................... 47

*Standley* v. *DOJ*,
    835 F.2d 216 (9th Cir. 1987) ...................................................... 4, 44, 48

*Sussman* v. *United States Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ........................................................ 13

*The New York Times Co.* v. *DOJ*,
    2024 WL 1109260 (2d Cir. Mar. 14, 2024) ....................................... 12

*United States* v. *Brown*,
    784 F.3d 1301 (9th Cir. 2015) .......................................................... 23

*United States* v. *Dionisio*,
    410 U.S. 1 (1973) ............................................................................ 27

*United States* v. *Dynavac, Inc.*,
    6 F.3d 1407 (9th Cir. 1993) .............................................. 36, 39, 45, 46

*United States* v. *Forman*,
    71 F.3d 1214 (6th Cir. 1995) ............................................................ 23

*United States* v. *Navarro-Vargas*,
    408 F.3d 1184 (9th Cir. 2005) .......................................................... 26

*United States* v. *Norian Corp.*,
    709 Fed. Appx. 138 (3d Cir. 2017) ............................................... 32, 40

*United States* v. *Procter & Gamble Co.*,
    356 U.S. 677 (1958) ...................................................................... 3, 27

*United States* v. *R Enters., Inc.*,
    498 U.S. 292 (1991) ........................................................................ 25

*United States* v. *Rutherford*,
    509 F.3d 791 (6th Cir. 2007) .......................................................... 4, 32

*United States* v. *Sells Eng'g*,
    463 U.S. 418 (1983) .............................................................. 25, 34, 49

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and*
  *Prods. Liab. Litig.*,
  480 F. Supp. 3d 1050 (N.D. Cal. 2020) .................................................. 8

*Zeyad Abdeljabbar* v. *BATF*,
  74 F. Supp. 3d 158 (D.D.C. 2014) ...................................................... 33

## Statutes and Rules

Fed. R. App. P. 4(a) ........................................................................ 5

Fed. R. Crim. P. 6(e) ................................................................. *passim*

## Other Authorities

Susan W. Brenner & Lori E. Shaw, *Federal Grand Jury: A*
  *Guide to Law and Practice* (2d ed. 2023)............................................ 16

Richard M. Calkins, *Grand Jury Secrecy*, 63 Mich. L. Rev.
  455 (1965)............................................................................ 26

Andrea M. Nervi, *FRCrP 6(e) and the Disclosure of*
  *Documents Reviewed by a Grand Jury*,
  57 U. Chi. L. Rev. 221 (1990)........................................................ 28

Webster's New Collegiate Dictionary (1977) ......................................... 29

## INTRODUCTION

Through his one-page FOIA request, Professor Lawrence Kalbers seeks millions of Volkswagen AG's confidential business documents, all of which were voluntarily produced to the Department of Justice in response to a grand jury subpoena. Professor Kalbers requested "all factual evidence" that Volkswagen provided to DOJ in connection with its criminal investigation into certain diesel-engine vehicles in the United States. 3-ER-355. The district court (Olguin, J.) interpreted that vague request to include any documents that Volkswagen had produced to DOJ under a grand jury subpoena, a decision that "expanded the universe of [Volkswagen's] documents at issue . . . to nearly 6 million." *Kalbers* v. *DOJ*, 22 F.4th 816, 821 (9th Cir. 2021). The court then adopted a special master's report and recommendation finding that *all* of those millions of documents are subject to FOIA disclosure. That ruling is erroneous and should be reversed. Doing so would end this unprecedented FOIA litigation.

Federal Rule of Criminal Procedure 6(e) bars the disclosure of "a matter occurring before the grand jury," subject to narrow exceptions inapplicable here. As defendants and witnesses do every day,

Volkswagen relied on Rule 6(e)'s protections in cooperating with the government. It turned over the documents at issue to the grand jury under assurances of confidentiality and stamped them "FOIA CONFIDENTIAL – PRODUCED PURSUANT TO RULE 6(e)." Until the decision below, no court had ever ordered disclosure under FOIA of such identifiable grand jury materials. That is because FOIA exempts from disclosure documents protected by other statutes, like Rule 6(e). Given that Volkswagen's confidential documents subpoenaed by the grand jury clearly qualify as "matter[s] occurring before the grand jury," DOJ properly withheld them from Professor Kalbers.

The district court's rulings have turned what should have been a simple FOIA case into a prolonged and resource-intensive one. This litigation has now persisted for nearly six years. The parties, including both DOJ and Volkswagen, have spent thousands of hours litigating Professor Kalbers's patently improper request. The case has even taken a previous trip to this Court, which reversed the district court's denial of Volkswagen's application to intervene in the proceedings, holding that the district court had "turned the [intervention] rule on its head." *Kalbers*, 22 F.4th at 824. Now, on the straightforward question of Rule

6(e)'s applicability, after the parties submitted at least 21 briefs totaling over 500 pages, the district court did the same with respect to grand-jury-secrecy rules. This time around, the Court should put this long-running litigation to an end.

The district court's decision holding that Volkswagen's records are not protected by Rule 6(e) flouts a tradition of grand jury secrecy dating back to the common law. As the Supreme Court has explained, those secrecy protections, which Rule 6(e) codified, are "indispensable" because they protect the integrity of the grand jury itself and the privacy of all those subject to its coercive power. *United States* v. *Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). And under Rule 6(e), when a grand jury subpoenas a company's business records, the responsive records in the government's possession are "matter[s] occurring before the grand jury."

Thus, where, as here, federal prosecutors possess records *only* through the grand jury process, FOIA does not require them to turn over those records to the public. Indeed, the D.C., Second, and Third Circuits have held that "corporate records received from [grand jury] subpoenas" are subject to Rule 6(e) and are therefore "properly withheld pursuant to FOIA Exemption 3." *Grynberg* v. *DOJ*, 758 Fed. Appx. 162, 163 (2d Cir.

2019); *Fund for Constitutional Gov't* v. *National Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (documents "obtained for use in grand jury investigations" are "exempt from FOIA disclosure under Exemption 3"); *McDonnell* v. *United States*, 4 F.3d 1227, 1246 (3d Cir. 1993) ("information and records" about corporate entity subpoenaed by grand jury "fall[] within" "Exemption 3"); *see also United States* v. *Rutherford*, 509 F.3d 791, 795 (6th Cir. 2007) (third parties are "not entitled to . . . documents obtained by grand jury via coercion").  That is sufficient to resolve this case.

Moreover, the application of Rule 6(e) could hardly be clearer here. The special master (whose report and recommendation the district court adopted) acknowledged that Volkswagen's confidential business records are in DOJ's possession solely because of the grand jury investigation. 1-ER-4.  And, Volkswagen's records are *labeled* as responsive to a grand jury subpoena, meaning that there would be no way to disclose the requested documents without revealing the core of what Rule 6(e) protects: the "strategy or direction of the [grand jury's] investigation." *Standley* v. *DOJ*, 835 F.2d 216, 218 (9th Cir. 1987) (citation omitted).

To reach the unprecedented conclusion that FOIA somehow trumps Rule 6(e)'s strict protection for records obtained pursuant to a grand jury subpoena, the special master—in the report and recommendation summarily adopted by the district court—distinguished between two categories of grand jury documents. The special master correctly recognized that Rule 6(e) protects documents "directly associated with the grand jury process, such as affidavits and deposition transcripts." 1-ER-19-20. But the special master then incorrectly placed outside of Rule 6(e)'s protections any records that Volkswagen "created for purposes independent of grand jury investigations [and] have legitimate uses *unrelated to* the substance of the grand jury proceedings." 1-ER-20, 22. (emphasis added).

The special master's treatment of Volkswagen's confidential business records lacks any basis in precedent or common sense. Given that almost all records subpoenaed by a grand jury predate its investigation, the special master's rule would gut grand jury secrecy by authorizing a simple end-run around Rule 6(e) by anyone who seeks grand jury records under FOIA. This Court's adoption of that rule would eviscerate the reasonable expectation of confidentiality that private

parties like Volkswagen have long understood applies to their cooperation with federal prosecutors and would subject guilty and innocent parties alike to "public ridicule." *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U.S. 211, 219 (1979). Under such a toothless Rule 6(e) regime, participants in criminal investigations would be much more reticent to cooperate fully with a grand jury's investigation because federal prosecutors would be required to disclose to any FOIA requester all documents obtained by a grand jury.

None of that is necessary. FOIA "focuses on the citizens' right to be informed about what their *government* is up to." *DOJ* v. *Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (emphasis added). It does not authorize the release of private parties' confidential information submitted under threat of prosecution. Where, as here, a private party's confidential business records are in prosecutors' possession solely because they were subpoenaed by a grand jury, Rule 6(e) bars DOJ from releasing those records to the public. FOIA Exemption 3, in turn, expressly exempts such documents from disclosure. This Court should therefore reverse, which would finally conclude Professor Kalbers's unprecedented FOIA case.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291, because the district court's order "finally resolved" DOJ's petitions, which are two of three cases that were consolidated below. *See Hall* v. *Hall*, 584 U.S. 59, 65, 77 (2018) ("[C]onstituent cases [in a consolidated action] retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party.").

In the alternative, this Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because the decision below grants relief that is injunctive in nature by ordering DOJ to issue a revised *Vaughn* index describing records obtained pursuant to a grand jury subpoena. 1-ER-3-4; 2-ER-278; *see Leopold* v. *CIA*, 987 F.3d 163, 169 (D.C. Cir. 2021) (order requiring DOJ to reveal the existence of a record is appealable because "any later agency appeal would be fruitless").

The district court issued its short order adopting in full the special master's report and recommendation on February 9, 2024. 1-ER-3. Volkswagen timely filed a notice of appeal on February 26, 2024. 2-ER-63; *see* Fed. R. App. P. 4(a)(1)(B).

-7-

## STATEMENT OF THE ISSUE

Whether Federal Rule of Criminal Procedure 6(e) protects from public disclosure in response to a FOIA request a company's confidential business records that DOJ obtained solely through a grand jury subpoena.

## STATUTORY ADDENDUM

The pertinent statute and rule are set forth in an addendum to this brief. *See* Circuit Rule 28-2.7.

## STATEMENT OF THE CASE

### A.    Factual Background

In 2015, the Environmental Protection Agency alleged that Volkswagen had violated the Clean Air Act by installing so-called "defeat devices" in diesel vehicles sold in the United States. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 480 F. Supp. 3d 1050, 1056 (N.D. Cal. 2020). Around that time, DOJ initiated a criminal investigation of Volkswagen and its employees. *Kalbers*, 22 F.4th at 819. As part of that investigation, a grand jury was empaneled in the Eastern District of Michigan. The grand jury subsequently issued a subpoena for Volkswagen's records. 2-ER-173.

-8-

Volkswagen agreed to cooperate fully with DOJ's investigation, including by providing DOJ with a massive amount of its confidential business records. 2-ER-221-222; *United States* v. *Volkswagen AG*, No. 16-cr-20394 (E.D. Mich. Mar. 10, 2017), Dkt. No. 68 (Plea Agreement) ¶ (2)(B). That cooperation involved "gathering substantial amounts of evidence and performing forensic data collections in multiple jurisdictions," as well as "producing voluminous evidence and information." Plea Agreement ¶ 3(A)(2). As part of this process, Volkswagen and its affiliates, through Volkswagen's then-criminal counsel at the Jones Day law firm, met with DOJ prosecutors and "provided millions of documents in response to [the] grand jury subpoena." *Kalbers*, 22 F.4th at 819.

As DOJ acknowledged below, when Volkswagen provided its documents to DOJ pursuant to a grand jury subpoena, it received "government assurances [they] would be kept confidential, consistent with the strictures of Rule 6(e)." 3-ER-328. Volkswagen memorialized this shared understanding by marking the documents it produced with a prominent stamp: "FOIA CONFIDENTIAL – PRODUCED PURSUANT TO RULE 6(e)." 2-ER-104, 173, 267. That marking "reflect[ed]

Volkswagen's expectation and understanding that it was producing private records in response to a grand jury subpoena and that those records would be subject to the grand-jury-secrecy rules set forth in Federal Rule of Criminal Procedure 6(e)." 2-ER-104. Since producing its confidential business records to the grand jury, Volkswagen has "taken comprehensive steps to ensure the[ir] confidentiality," and has never "publicly disclosed or identified" them. 2-ER-105.

DOJ likewise took great care to preserve the confidentiality of Volkswagen's business records. DOJ kept Volkswagen's records in a strictly controlled database maintained by its Criminal Division. 2-ER-173. In fact, the Criminal Division granted only certain members of the prosecution team and supporting staff access to the database on a case-by-case basis. 2-ER-89, 173. Even the DOJ civil-enforcement attorneys working on Volkswagen matters did not have access to the database containing the records produced in response to the grand jury subpoena. 2-ER-173.

Between 2016 and 2019, the grand jury returned indictments against 12 current or former executives and employees of Volkswagen and its affiliate, Audi AG. 2-ER-150-151. Two individuals pleaded guilty,

-10-

and charges remain pending against the other indicted individuals, including Volkswagen AG's former CEO. *Id.* Meanwhile, in 2017, Volkswagen and DOJ entered into a plea agreement under which Volkswagen pleaded guilty to certain counts, accepted a three-year probationary term, paid a $2.8 billion penalty, and agreed to continue its cooperation with DOJ's criminal investigation and participate in an independent compliance monitorship. Plea Agreement ¶¶ 1(C), 3(B), 6(A), 7(A).

### B.  Procedural History

#### 1.  Professor Kalbers Submits His FOIA Request.

In June 2018, plaintiff Lawrence Kalbers—an accounting professor at Loyola Marymount University—submitted a one-page FOIA request to DOJ seeking "all 'factual evidence' presented by" Volkswagen's criminal counsel to DOJ "as the term i[s] used on p. 295 of Volkswagen's 2017 Annual Report." 3-ER-404. Page 295 of Volkswagen's 2017 Annual Report, in turn, explained that Volkswagen instructed its criminal counsel "to carry out an extensive investigation of the diesel issue in light of the DOJ's and [German authorities'] criminal investigations" into Volkswagen and to cooperate with those investigations, including by "present[ing] factual evidence to the DOJ." 3-ER-338.

Professor Kalbers initially sought Volkswagen's records purportedly to "investigat[e]" the publicly available plea deal between Volkswagen and DOJ and to use in an article on the "criminal actions brought by the DOJ against [Volkswagen]." 2-ER-132. He later announced that he plans to turn them over to *The New York Times*. 2-ER-102. *The New York Times*, for its part, submitted its own FOIA request for a report submitted to DOJ by Volkswagen's independent compliance monitor concerning the diesel issue. *See The New York Times Co.* v. *DOJ*, 2024 WL 1109260, at *1 (2d Cir. Mar. 14, 2024). The Second Circuit recently approved DOJ's withholding of the majority of the monitor's report under FOIA Exemption 5. *Id*. at *3. Professor Kalbers, by contrast, seeks not just the monitor's reports but "all factual evidence" that Volkswagen provided to DOJ during its criminal investigation. 3-ER-355.[1]

In July 2018, DOJ correctly denied Professor Kalbers's FOIA request on the ground that all of the requested documents are exempt from disclosure under FOIA. 3-ER-405. Professor Kalbers then sued

---

[1] Professor Kalbers's request for reports submitted to DOJ by Volkswagen's independent compliance monitor is not at issue in this appeal. *See* 3-ER-404.

DOJ in the United States District Court for the Central District of California to compel disclosure of the withheld documents. 3-ER-403.

### 2. The District Court Denies Volkswagen's Motion to Intervene and DOJ's Motion for Summary Judgment.

Shortly thereafter, Volkswagen moved to intervene in the FOIA suit. *Kalbers*, 22 F.4th at 821. While Volkswagen's motion to intervene was pending, DOJ sought summary judgment. 3-ER-339-394. DOJ explained that it had construed Professor Kalbers's request for "factual evidence" presented by Volkswagen's criminal counsel to DOJ to mean documents presented by Volkswagen's criminal counsel to DOJ during a series of in-person meetings conducted after the grand jury issued a subpoena to Volkswagen. 3-ER-313. Because all "274 documents" presented at those meetings had been produced in response to a "grand jury subpoena," DOJ explained that FOIA Exemption 3—which incorporates Federal Rule of Criminal Procedure 6(e)—applied. 3-ER-349, 374-381; *see Sussman* v. *United States Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007) (explaining that FOIA Exemption 3 incorporates Rule 6(e)). DOJ also invoked several other FOIA

exemptions, including Exemptions 4 and 5. 3-ER-358-365, 383-386, 388-389.

In October 2020, the district court erroneously denied Volkswagen's intervention motion. 2-ER-286-293, 298. In the same order, the district court denied DOJ's motion for summary judgment on the ground that DOJ had misinterpreted Professor Kalbers's FOIA request and had thus conducted an inadequate search. 2-ER-293-298. In a subsequent order, the district court explained that DOJ should have construed Kalbers's request to seek "*all records and materials . . .* relating to [Volkswagen's] evasion of U.S. emission standards and transmitted by Jones Day to the DOJ" during the course of DOJ's criminal investigation, including those "produced in response to a grand jury subpoena," but not presented at the in-person meetings. 2-ER-272 (emphasis added). As this Court later summarized, "in the same breath, the district court denied VW's request to intervene and expanded the universe of VW's documents at issue from around 300 to nearly 6 million." *Kalbers*, 22 F.4th at 821.

The district court, however, did not rule on whether any FOIA exemptions applied to the 274 records that DOJ had already identified as responsive. Rather, the court directed DOJ to conduct a new search

and submit an updated *Vaughn* index commensurate with the expanded universe of six million documents.  2-ER-298-299.

Volkswagen appealed the denial of its intervention motion, and this Court held that the district court had abused its discretion in not allowing Volkswagen to participate. *Kalbers*, 22 F.4th at 824.  According to this Court, the district court had conducted the "wrong inquiry" and misconstrued each of the three factors relevant to deciding a motion to intervene.  *Id.*  The Court criticized both the district court's "overheated" rhetoric "directed towards VW's counsel" and its legal analysis, which had "turned the applicable rule" for intervention of an interested party "on its head."  *Id.* at 824 & n.5.

Meanwhile, in a February 2021 order, the district court issued a ruling describing the parameters for DOJ's amended *Vaughn* index and expressing skepticism about DOJ's invocation of Rule 6(e). 2-ER-273-276.  By that point, DOJ had submitted a detailed declaration explaining that Professor Kalbers's FOIA request now encompassed documents that were in DOJ's possession *only* "because of the grand jury investigation."  3-ER-310-311, 326.  The court previewed its doubts about DOJ's invocation of Rule 6(e), labeling DOJ's interpretation of the rule

"overly broad" and "unreasonable." 2-ER-273. The court posited that, in its view, any of Volkswagen's confidential business records that "existed" in some form *before* the grand jury subpoena—meaning almost all evidence subpoenaed by the grand jury—were unlikely to be protected by Rule 6(e). 2-ER-275. But the court declined to decide whether and to what extent Rule 6(e) applies. Instead, it appointed a special master, at DOJ's expense, to "regulate all proceedings" and "rul[e] on the parties' disputes relating to the applicability of any FOIA exemptions." 2-ER-262.

### 3. DOJ Files Rule 6(e) Petitions in the Eastern District of Michigan, Which Are Transferred and Consolidated.

Rule 6(e) provides that when the government seeks "to disclose a grand-jury matter" "preliminarily to or in connection with a judicial proceeding," it must first file a "petition to disclose . . . in the district where the grand jury convened." Fed. R. Crim. P. 6(e)(3)(E)-(F); *see* 2 Susan W. Brenner & Lori E. Shaw, *Federal Grand Jury: A Guide to Law and Practice*, § 18:10 (2d ed. 2023). As a result, once it became evident that the resolution of Professor Kalbers's FOIA request could require the disclosure of grand jury materials, DOJ sought a ruling from the court in

which the grand jury had been empaneled—the Eastern District of Michigan. *See* 2-ER-208-257. DOJ filed substantially identical disclosure petitions in two miscellaneous cases in the United States District Court for the Eastern District of Michigan related to the two ongoing criminal cases stemming from the grand jury's investigation into Volkswagen. 2-ER-147. DOJ requested a determination of whether Rule 6(e) barred the agency from disclosing the subpoenaed documents in the *Kalbers* FOIA case. 2-ER-208-211.[2]

Shortly after the petitions were filed, the district court in the Eastern District of Michigan *sua sponte* transferred those petitions to the Central District of California. 2-ER-198-199. The California district court then consolidated the petitions with the *Kalbers* FOIA case under Federal Rule of Civil Procedure 42(a) and referred the petitions to the same special master. 2-ER-193.

---

[2] Volkswagen was named as a respondent party to one of DOJ's petitions, and therefore was permitted to participate in proceedings related to the petitions even before this Court's December 2021 order permitting full intervention in the *Kalbers* FOIA case. 2-ER-130, 193.

-17-

### 4.    The District Court Denies the Petitions.

After consolidation, it became clear that, as DOJ explained, a final resolution of the Rule 6(e) issue "would address all (or nearly all) the records at issue" in the case. 2-ER-196. At the direction of the special master, the parties thus submitted over 500 pages of briefing on the Rule "6(e) issue presented in the [p]etitions." 2-ER-190.

In November 2023, the special master determined that Rule 6(e) did not protect Volkswagen's confidential business records from disclosure under FOIA and recommended that the district court deny the petitions. 1-ER-4, 21-22, 32. In reaching that recommendation, the special master acknowledged that Volkswagen's "business records . . . were collected and produced in response to the grand jury subpoena." 1-ER-21-22. But the special master reasoned that Volkswagen's confidential business records nevertheless fall outside of Rule 6(e)'s protections because those records were originally "created" by Volkswagen "for purposes independent of grand jury investigations, and have legitimate uses unrelated to the substance of the grand jury proceedings." 1-ER-22. Applying that standard, the special master found that DOJ's disclosure of *millions* of grand jury-subpoenaed documents in

response to Professor Kalbers's FOIA request would not "compromise the secrecy of the grand jury process." *Id.*

On February 9, 2024, the district court adopted the special master's report and recommendation without any further analysis. 1-ER-3. Volkswagen and DOJ appealed the district court's decision in the two petition cases. 2-ER-61-63. This Court *sua sponte* consolidated the appeals. Dkt. Nos. 17 (24-1048) & 10 (24-1477).

## SUMMARY OF ARGUMENT

Rule 6(e) categorically bars DOJ from disclosing pursuant to a FOIA request *any* materials it has obtained solely through a grand jury subpoena, including Volkswagen's confidential business records in this long-running case. And even if there were no categorical bar on disclosing all material subpoenaed by a grand jury, these particular Volkswagen records are exempt from disclosure because they are facially identifiable as grand jury documents.

The district court's unprecedented rule, under which any materials subpoenaed by a grand jury *must* be disclosed to a FOIA requester, so long as the documents predate the grand jury's investigation (as most will), would effectively eliminate the well-settled secrecy protections

surrounding the grand jury's investigation. It would also undermine federal criminal prosecutions, particularly of large companies that voluntarily cooperate with such investigations by producing their confidential business records.

A. Dating back to the common law, all aspects of grand jury proceedings have been kept secret. Maintaining the confidentiality of grand jury proceedings protects the integrity of the grand jury and the interests of those subject to its sweeping investigatory power. Rule 6(e) expressly codifies longstanding grand jury secrecy protections by ensuring the "secrecy" of any "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2).

B. Rule 6(e)'s plain text, the decisions of multiple courts of appeals, and common sense all dictate that Rule 6(e) prohibits the government from disclosing documents it has obtained solely through a grand jury subpoena. Grand jury secrecy is not nullified merely because someone files a FOIA request, as Professor Kalbers did here. Rather, FOIA Exemption 3 incorporates the grand jury secrecy restrictions in Rule 6(e). A FOIA request for documents in federal prosecutors' hands pursuant to a grand jury subpoena is fully *dependent* on the grand jury's

-20-

investigation and would necessarily reveal information about that investigation. Rule 6(e) bars such an obvious intrusion on the grand jury process and on private parties' reasonable expectations of confidentiality of their records.

C.     Following long-settled DOJ practice, DOJ established that Volkswagen's confidential business records are protected by Rule 6(e). As construed by the district court, Professor Kalbers's FOIA request seeks six million records that Volkswagen's criminal counsel presented to DOJ—that is, records the grand jury subpoenaed from Volkswagen. DOJ submitted declarations establishing that it possesses Volkswagen records *only* because of the grand jury's investigation, and that the records were correctly marked as having been subpoenaed by the grand jury. Professor Kalbers has no independent right to Volkswagen's confidential business records, and absent the grand jury's investigation he would have no way of obtaining them. As such, the documents are protected by Rule 6(e).

At a minimum, even if a FOIA requester could sometimes obtain grand jury materials directly from DOJ, Volkswagen's confidential business records would still be exempt from disclosure here. All courts

of appeals agree that grand jury documents are never subject to disclosure if their revelation would compromise the integrity of the grand jury process by, for example, revealing the direction of the grand jury's investigation. Volkswagen's records are facially *identifiable* as grand jury material. There would be no way to redact and disclose those records without revealing what the grand jury asked for and thus the direction of the grand jury's investigation. To Volkswagen's knowledge, no court has ordered the disclosure of identifiable grand jury material.

D. The district court, by adopting wholesale the special master's recommendation, misinterpreted Rule 6(e) and misconstrued this Court's precedent. Its ruling would eviscerate Rule 6(e) with respect to the vast majority of grand jury materials. According to the district court, FOIA requires disclosure of all materials subpoenaed by a grand jury, so long as the documents were *created independently of* the grand jury's investigation, as almost all subpoenaed documents are. But Rule 6(e) expressly protects any "matter occurring before the grand jury," not just materials created for the grand jury. If this Court holds otherwise it would open up an unprecedented and gaping hole in Rule 6(e), allowing broad public access to most of the contents of grand jury investigations,

and disrupting the settled expectations of parties such as Volkswagen that voluntarily produce confidential records in response to grand jury subpoenas.

## STANDARD OF REVIEW

This Court reviews "*de novo* a district court's interpretation of the Federal Rules of Criminal Procedure." *United States* v. *Brown*, 784 F.3d 1301, 1303 (9th Cir. 2015); *see United States* v. *Forman*, 71 F.3d 1214, 1217 (6th Cir. 1995) (interpreting "the scope" of Rule 6(e) "is a question of law" reviewed *de novo*).

## ARGUMENT

### RULE 6(e) EXPRESSLY PROTECTS FROM FOIA DISCLOSURE THE CONFIDENTIAL BUSINESS RECORDS THAT VOLKSWAGEN PRODUCED PURSUANT TO A GRAND JURY SUBPOENA.

Volkswagen produced the six million confidential business records now at issue to DOJ in response to a federal grand jury subpoena. Those records are still in the possession of federal prosecutors, and Volkswagen labeled its records as "PRODUCED PURSUANT TO RULE 6(e)." The central question before this Court is whether they are, or would reveal, "matter[s] occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B).

The answer is a straightforward "yes." By seeking these records directly from federal prosecutors, Professor Kalbers submitted a FOIA request for "matters occurring before" the Volkswagen "grand jury"—which is precisely what Rule 6(e) and Exemption 3 of FOIA prohibit. In finding otherwise, the district court adopted the special master's unprecedented interpretation of Rule 6(e), which misunderstands both the meaning of and interests supported by the grand-jury-secrecy rule.

Rule 6(e) prevents the government from disclosing materials *requested by* and *given to* a grand jury, regardless of whether the subpoenaed party *created* those materials before or after the grand jury was empaneled. There is no evidence that Congress intended FOIA to trump grand-jury-secrecy rules. Under the district court's created-for test, however, DOJ would be required to produce under FOIA virtually any record a grand jury might subpoena. 1-ER-22. If allowed to stand, such an unprecedented and unsupported expansion of FOIA would transform grand jury proceedings from confidential criminal investigations into mechanisms of public disclosure. Our criminal system would be far worse for it.

A. **Rule 6(e) Codifies Enduring Grand-Jury-Secrecy Protections.**

1. **Rule 6(e) Reflects the Long Tradition of Grand Jury Secrecy.**

The grand jury plays a critical role in our criminal-justice system. It is the "investigatory body charged with the responsibility of determining whether or not a crime has been committed." *United States v. R Enters., Inc.*, 498 U.S. 292, 297 (1991). Because the grand jury's task "is to inquire into all information that might possibly bear on its investigation until it has identified an offense," that investigative function is far-reaching. *Id.* Indeed, "[t]here are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence." *United States v. Sells Eng'g*, 463 U.S. 418, 433 (1983).

The grand jury's subpoena power is central to its investigatory authority. Through subpoenas, grand juries require witnesses to testify and produce documentary evidence for the grand jury's consideration. *See* Fed. R. Crim. P. 6, Notes of Advisory Committee on Rules (1983). Subpoenas are therefore "the fundamental documents used during a grand jury's investigation." *Id.* And given the grand jury's wide latitude to investigate potential crimes, this Court has aptly described its

-25-

subpoena authority as "the most extensive subpoena power known to the law." *In re Grand Jury Subpoena*, 825 F.2d 231, 236 (9th Cir. 1987) (quoting 2 Sara Beale & William Bryson, *Grand Jury Law and Practice* § 7:01 (1986)).

The wide-ranging grand jury investigations and ensuing deliberations have long been conducted in secret. At common law, a "policy of grand jury secrecy" arose in order to "protect the grand jurors and private citizens from the oppression of the state." Richard M. Calkins, *Grand Jury Secrecy*, 63 Mich. L. Rev. 455, 458 (1965); *see Borg* v. *Boas*, 231 F.2d 788, 794 (9th Cir. 1956) (describing the "veil of secrecy" that covered grand jury proceedings at common law). Drawing on that practice, colonial "grand jurors pledged to an oath of secrecy, and its violation was both a contempt and a crime." *United States* v. *Navarro-Vargas*, 408 F.3d 1184, 1192 (9th Cir. 2005) (en banc). This legacy of secrecy was then incorporated into "our constitutional grand jury," which "was intended to operate substantially like its English progenitor." *Costello* v. *United States*, 350 U.S. 359, 362 (1956).

Today, in keeping with that long-settled practice, Rule 6(e), entitled "Secrecy," prohibits the "disclosure" of "matter[s] occurring before the

grand jury" by those with access to grand jury proceedings, including government prosecutors and the grand jurors themselves.  Fed. R. Crim. P. 6(e)(2)(B).  Rule 6(e) "protects the secrecy of the grand jury" by prohibiting "the 'disclosure' of grand jury information . . . except in a few limited circumstances."  *In re Grand Jury Subpoenas*, 472 F.3d 990, 996 (8th Cir. 2007).  Those circumstances are confined to Rule 6(e)(3)'s "enumerated exceptions," which are "exhaustive."  *McKeever* v. *Barr*, 920 F.3d 842, 845 (D.C. Cir. 2019).  The narrow exceptions consist of disclosure to (i) a government attorney "for use in performing that attorney's duty"; (ii) another federal grand jury; and (iii) certain specified government agencies and individuals when the grand jury matter involves foreign intelligence and the like.  Fed. R. Crim. P. 6(e)(3).

### 2.  Rule 6(e) Serves Critical Public and Private Interests.

This secrecy protection surrounding grand jury proceedings is crucial in several ways.  *First*, grand jury secrecy supports the integrity of the grand jury's investigation and deliberations.  *See United States* v. *Dionisio*, 410 U.S. 1, 17 (1973).  Most notably, secrecy prevents "tampering with . . . witnesses," *Procter & Gamble Co.*, 356 U.S. at 681

n.6, or undue "pressure on grand jury members," *In re Grand Jury Subpoena Duces Tecum*, 797 F.2d 676, 680 (8th Cir. 1986).

*Second*, secrecy encourages more disclosure and voluntary cooperation with the grand jury. Absent secrecy protections, prospective witnesses "would be hesitant to come forward voluntarily," and those who do come forward "would be less likely to testify fully." *Douglas Oil Co.*, 441 U.S. at 219. Moreover, potential cooperators, such as Volkswagen here, might hesitate if they worried that civil litigants would "exploit[] the grand jury's extensive investigative powers" by turning grand juries into a means of securing information they would not otherwise be able to obtain. Andrea M. Nervi, *FRCrP 6(e) and the Disclosure of Documents Reviewed by a Grand Jury*, 57 U. Chi. L. Rev. 221, 222 (1990). Subpoena recipients would certainly have a more pressing need to litigate over the scope of documents sought by grand juries and less reason to cooperate promptly with DOJ investigations.

*Third*, secrecy protects the privacy of those subject to the grand jury's exercise of its investigative authority. In particular, it guards the "important interest[s]" of those "who have produced their confidential records under compulsion," in "recognition of the extraordinary coercive

-28-

powers of the grand jury." *In re Grand Jury Proceedings*, 851 F.2d 860, 865 (6th Cir. 1988). Absent such protections, the targets of a grand jury investigation—innocent and guilty alike—would have their confidential information exposed to public view and subject to "public ridicule." *Douglas Oil Co.*, 441 U.S. at 219. For all these reasons, the Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Rehberg* v. *Paulk*, 566 U.S. 356, 374 (2012).

**B.    Rule 6(e) Shields Material Subpoenaed by the Grand Jury and Available to the Government Only Through It.**

As a matter of text, precedent, and common sense, Rule 6(e)'s secrecy protections do not allow DOJ to disclose a private party's records obtained through a grand jury subpoena.

1.    On its face, Rule 6(e) encompasses materials that DOJ possesses only because they were subpoenaed by a grand jury. The rule, entitled "Secrecy," prohibits "disclosure" of "matter[s] occurring before the grand jury" by "an attorney for the government." Fed. R. Crim. P. 6(e)(2). Although not defined in the rule, the plain meaning of "matter" is a "subject under consideration." Matter, *Webster's New Collegiate*

*Dictionary* (1977). Thus, Rule 6(e) prohibits those with access to grand jury proceedings from disclosing *any* "subject" under the grand jury's "consideration." That definition clearly encompasses the investigative portions of a grand jury's proceedings, such as materials the grand jury subpoenas.

Other provisions of Rule 6(e) confirm that its reference to "matter[s] occurring before the grand jury" broadly encompasses all aspects of the grand jury's investigation and is not limited to discrete proceedings or targeted documents. For example, "personnel" that assist attorneys for the government in enforcing federal criminal law may not disclose "a grand jury matter." Fed. R. Crim. P. 6(e)(2)(B)(vii); *see* Fed. R. Crim. P. 6(e)(3)(A)(ii). Such personnel typically assist with "investigations involving analysis of books and records." Fed. R. Crim. P. 6, Notes of Advisory Committee on Rules (1977). Similarly, the rule permits disclosure to the government in certain circumstances of a "grand-jury matter" "*other than* the grand jury's deliberations or any grand juror's vote." Fed. R. Crim. P. 6(e)(3)(A) (emphasis added). That means a "grand-jury matter" must capture more than just deliberations and voting. And a "grand-jury matter" must also refer to more than specific

documents created by the grand jury because the rule provides that those documents, *i.e.*, "Records, orders, and subpoenas," must be kept under seal.  Fed. R. Crim. P. 6(e)(6).

As all these provisions make clear, when Congress preserved the secrecy of "matter[s] occurring before the grand jury," it spoke broadly. If Congress had intended a narrower sphere of confidentiality, "it could have easily used narrower language," *Mont* v. *United States*, 139 S. Ct. 1826, 1833 (2019), like "materials created by or for the grand jury."  This Court should not "override Congress' choice to employ [a] more capacious phrase." *Id.*   Professor Kalbers has never presented any authority indicating that Congress intended FOIA to supersede the longstanding secrecy governing grand jury proceedings.   To the contrary, "FOIA requests were never intended to be used as the private equivalent of a grand jury subpoena." *Am. Fed'n of Gov't Emps., Loc. 2782* v. *U.S. Dep't of Com.*, 632 F. Supp. 1272, 1278 (D.D.C. 1986), *aff'd*, 907 F.2d 203 (D.C. Cir. 1990).

2.     Although this Court has not directly considered the question, other courts have determined that Rule 6(e) bars prosecutors from disclosing documents obtained through grand jury subpoenas.  As the

D.C. Circuit has explained, when a party—typically a FOIA requester—"seeks [documents] from an entity whose possession of [the documents] is *directly linked* to its role relating to the grand jury investigation[]," Rule 6(e) prohibits disclosure because "revelation in [that] particular context would in fact reveal what was before the grand jury." *Fund for Constitutional Gov't*, 656 F.2d at 870 (emphasis added); *see Grynberg* v. *DOJ*, 758 Fed. Appx. 162, 163 (2d Cir. 2019) ("[C]orporate records received from [grand jury] subpoenas" were "properly withheld pursuant to FOIA Exemption 3."); *McDonnell* v. *United States*, 4 F.3d 1227, 1246 (3d Cir. 1993) ("information and records" about corporate entity subpoenaed by grand jury "fall[] within" Exemption 3); *see also Dassault Systemes, SA* v. *Childress*, 663 F.3d 832, 845 (6th Cir. 2011) (holding outside the FOIA context that "documents that were originally prepared in the ordinary course of business are presumptively 'matters occurring before the grand jury' when they have been requested pursuant to a grand jury investigation") (citations omitted).[3]

---

[3]     *See also United States* v. *Norian Corp.*, 709 Fed. Appx. 138, 141-142 (3d Cir. 2017) ("[M]edical records, doctors' notes, calendar appointments [and] other documents dated prior to the initiation of the grand jury" and subpoenaed by grand jury "are subject to Rule 6(e)."); *Rutherford*, 509

Numerous district courts, including in this Circuit, have likewise held that DOJ cannot disclose documents it has obtained through the grand jury process. *See, e.g.*, *McAtee* v. *DHS*, 2016 WL 4250267, at *2 (D. Mont. Aug. 10, 2016) ("[Plaintiff] cannot use FOIA" to obtain records because the agency "has the records *as a result of* a grand jury investigation.") (emphasis added); *Kortlander* v. *BLM*, 816 F. Supp. 2d 1001, 1015-1016 (D. Mont. 2011) (affirming agency's withholding of "documents obtained through grand jury subpoenas").[4]   Those courts

---

F.3d at 795 (explaining that Rule 6(e) barred a party seeking "income tax returns, federal tax returns, articles of incorporation, and bank account records" from obtaining documents that were "obtained by [the] grand jury via coercion"); *Peltier* v. *FBI,* 218 Fed. Appx. 30, 31 (2d Cir. 2007) ("Information identifying records subpoenaed by the grand jury" was properly withheld under "Exemption 3.").

[4]   *See also Canning* v. *DOJ*, 263 F. Supp. 3d 303, 310, 312 (D.D.C. 2017) (DOJ properly withheld under Exemption 3 "telephone records and information that identifies specific records subpoenaed by the Federal Grand Jury."); *Zeyad Abdeljabbar* v. *BATF*, 74 F. Supp. 3d 158, 172-173 (D.D.C. 2014) ("[D]ocuments obtained under grand jury subpoenas" were "properly withheld" under Exemption 3."); *Light* v. *DOJ*, 968 F. Supp. 2d 11, 26 (D.D.C. 2013) ("FOIA Exemption 3 . . . exempts from disclosure . . . records subpoenaed by a grand jury."); *Brunetti* v. *FBI*, 357 F. Supp. 2d 97, 105 (D.D.C. 2004) ("[R]ecords subp[oe]naed by the grand jury" were "properly withheld . . . pursuant to exemption (b)(3)."); *In re Grand Jury Disclosure*, 550 F. Supp. 1171, 1178 (E.D. Va. 1982) ("It is inconceivable that the disclosure of nearly 40 boxes of subpoenaed documents would not reveal what occurred before the grand jury."); *Martinson* v. *DEA*,

have rightly confirmed what the text of Rule 6(e) demands: a party cannot use FOIA to secure from the government "information" that was "obtained" through "the grand jury process," because doing so would reveal "matters occurring before the grand jury." *Judicial Watch, Inc.* v. *Nat'l Archives and Records Admin.*, 214 F. Supp. 3d 43, 55 (D.D.C. 2016).

3.    Finally, reading Rule 6(e) to bar DOJ from disclosing documents in its possession because they were subpoenaed by a grand jury comports with common sense. The grand jury enjoys a wide-ranging and relatively unmonitored subpoena power. *Sells Eng'g*, 463 U.S. at 423. That means the grand jury has access to an enormous amount of material, almost all of which predates its investigation and deliberations. As the Sixth Circuit has explained, given the grand jury's authority to compel document production, "[i]t makes no sense to construe Rule 6(e)

---

1997 WL 374803, at *2 (D.D.C. Feb 13, 1997) ("[Documents] obtained by the IRS Criminal Investigation Division pursuant to grand jury subpoenas . . . were exempt from disclosure under FOIA Exemption 3 in conjunction with Federal Rule of Criminal Procedure 6(e)."); *M.K.* v. *DOJ*, 1996 WL 509724, at *2 (S.D.N.Y. Sept. 9, 1996) ("[T]he billing records furnished in response to that subpoena . . . are wholly exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3)."); *Augarten* v. *U.S. Dep't of Treasury*, 1995 WL 350805, at *1 (D.D.C. May 22, 1995) ("[H]aving been obtained by grand jury subpoena, [the documents] are also exempt from disclosure under Exemption 3.").

in a way that would wholly exempt such confidential information extracted by compulsion." *In re Grand Jury Proceedings*, 851 F.2d at 866.

Indeed, were all the documentary records secured by a grand jury made available to literally anyone who asks for them in a short letter, as the district court countenanced, grand jury secrecy would "cease to exist." *McQueen* v. *United States*, 179 F.R.D. 522, 529 & n.15 (S.D. Tex. 1998) After all, "there would be few if any grand jury matters that could *not* be obtained through [a] FOIA request." *Id.* (emphasis added). That would "effectively gut" Rule 6(e) "of all meaningful protections." *Id.* at 529.

### C. Rule 6(e) Protects Volkswagen's Confidential Business Records from Disclosure to Professor Kalbers and the Press.

Rule 6(e)'s bar on the disclosure of documents that the government possesses through grand jury proceedings should resolve this case. Professor Kalbers's FOIA request, as construed by the district court, asks for all of the materials that Volkswagen produced to DOJ in response to a grand jury subpoena. *See* 2-ER-225. As DOJ explained in its declarations, those documents are in DOJ's possession solely "*because* of the grand jury investigation." 3-ER-326 (emphasis added). Absent that investigation, DOJ would not have those documents, and Professor

Kalbers would have no basis to obtain them: he is not, for example, engaged in any civil litigation with Volkswagen with any independent right to civil discovery from Volkswagen.

There is more. Professor Kalbers's request seeks Volkswagen's confidential business records because they were a part of a criminal investigation, and all the responsive records are facially identifiable as having been "Produced Pursuant to Rule 6(e)." 2-ER-104. As a result, there is no way to disclose those records without revealing their connection to the grand jury and thereby threatening the "integrity of the grand jury" process. *United States* v. *Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir. 1993).

Either reason is independently sufficient to apply Rule 6(e)'s protections here.

### 1.     The Requested Volkswagen Confidential Business Records Are Categorically Protected Grand Jury Materials.

Rule 6(e)'s categorical bar on disclosure applies where (i) the requested documents were subpoenaed by a grand jury, and (ii) those documents are requested from a party that has the documents solely from the grand jury process. Both criteria are satisfied here.

*First*, there is no dispute that Volkswagen produced the requested records pursuant to a grand jury subpoena. Professor Kalbers asked for the "factual evidence" that Volkswagen's criminal counsel presented to DOJ while investigating "the diesel issue." 3-ER-336, 338. The "[g]overnment's possession" of records in the "context of [a] criminal investigation" "establishes a strong likelihood that they were produced pursuant to a grand jury subpoena." *Grynberg* v. *DOJ*, 302 F. Supp. 3d 532, 538 (S.D.N.Y. 2018), *aff'd* 758 Fed. Appx. 162. Here, as DOJ explained, Professor Kalbers seeks the "5.9 million records [DOJ received] from Jones Day, in its capacity as counsel to Volkswagen, in response to a subpoena issued by a federal grand jury investigating Volkswagen's criminal conduct." 2-ER-183; *see* 2-ER-73, 173, 267. And were there any doubt, the district court, in accepting the special master's recommendation, construed Professor Kalbers's request to include any records that "were produced in response to a grand jury subpoena." 2-ER-272.

*Second*, DOJ has explained that it possesses the requested Volkswagen records only through its role in the grand jury proceedings. In its declarations below, DOJ stated that it obtained the records "in

-37-

response to a subpoena issued by a federal grand jury investigating [Volkswagen's] criminal conduct," 2-ER-183, and that the records are in DOJ's possession "*because* of the grand jury investigation," 3-ER-326 (emphasis added). The agency did not separately seek and receive the responsive Volkswagen records outside of the grand jury process. *Id.* Moreover, DOJ's treatment of the documents confirms that the documents were in its possession solely because of a grand jury subpoena. DOJ stored the records in a restricted-access database and did not give access to anyone outside the criminal prosecution team. 2-ER-89, 173.

At bottom, Professor Kalbers's FOIA request is straightforward: he seeks documents from a government agency "which has the records as a result of a grand jury investigation." *McAtee*, 2016 WL 4250267, at *2. The application of Rule 6(e) is equally straightforward: releasing those confidential business records would disclose "matter[s] occurring before the grand jury" and is thus prohibited.

### 2. Releasing Volkswagen's Confidential Business Records Would Compromise the Integrity of the Grand Jury Process.

Even if this Court were to apply a more fact-specific inquiry, Volkswagen's confidential business records would still be exempt from

disclosure here. That is because Rule 6(e) always bars the disclosure of documents that would "compromise the integrity of the grand jury process." *Dynavac*, 6 F.3d at 1412. Here, Professor Kalbers broadly seeks all of Volkswagen's confidential records produced to the grand jury. The public release of such records would "compromise the integrity of the grand jury process," *id.*, by revealing "*which* documents" the grand jury subpoenaed and therefore the "direction of the [grand jury's] investigation." *Senate of Puerto Rico ex. rel. Judiciary Comm. v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987). Because there would be no way to hide these records' connection to the grand jury process, Rule 6(e) bars their disclosure.

a.     As DOJ and Volkswagen explained in their declarations, the confidential business records that Professor Kalbers seeks are identifiable grand jury materials for two reasons. *First*, Professor Kalbers's request is directly tethered to the grand jury investigation. He is not looking for documents on a certain subject, but rather is seeking the *results* of DOJ's criminal investigation into Volkswagen—that is, the "factual evidence" that Volkswagen's criminal counsel presented to DOJ after that counsel investigated "the diesel issue," so that he can turn

those records over to *The New York Times*. 3-ER-332, 338; *see Norian Corp.*, 709 Fed. Appx. at 142 ("[A] general request for all documents collected or received in connection with a grand jury investigation . . . would be in effect a disclosure of the grand jury proceedings."). DOJ has not identified any records that constitute "evidence" provided by Volkswagen, other than those provided in response to a grand jury subpoena. Any Volkswagen record responsive to Professor Kalbers's request is thus necessarily a grand jury document, and there would be no way to shield that obvious connection.

*Second*, the Volkswagen confidential business records are facially identifiable as having been subpoenaed by a grand jury. They are marked "FOIA CONFIDENTIAL – PRODUCED PURSUANT TO RULE 6(e)." 2-ER-104; 2-ER-184. The records themselves "reveal to the requester that they ha[ve] been subpoenaed by a grand jury." *Bartko* v. *DOJ*, 898 F.3d 51, 73 (D.C. Cir. 2018) (quotations omitted). Nor can the records simply be redacted. The "agency would still have to claim Exemption 3, and specify Rule 6(e) in its justification for the redaction." *Labow* v. *DOJ*, 278 F. Supp. 3d 431, 445 (D.D.C. 2017). And "[r]edacting a heading or exhibit stamp," when "accompanied by a Rule 6(e)

justification, itself reveals that the produced document relates somehow to a grand jury proceeding," making the redaction meaningless. *Id.*

Under these circumstances, then, there is no way to disclose Volkswagen's confidential business records without compromising the secrecy of the grand jury's investigation. Because subpoenaed evidence "is intended to be used by the grand jury," revealing *the fact that* certain documents have been subpoenaed discloses the core of what Rule 6(e) protects: the "strategy or direction of the [grand jury's] investigation." *Lopez* v. *DOJ*, 393 F.3d 1345, 1349, 1350 (D.C. Cir. 2005). Disclosure would specifically "show[] where the Government sought its evidence [and] the sources of information it had relied on to develop the facts of its investigation." *Grynberg*, 302 F. Supp. 3d at 538. Because Volkswagen's records cannot be disclosed without revealing this "connection" to the grand jury proceedings, Rule 6(e) protects them in full. *Labow* v. *DOJ*, 831 F.3d 523, 530 (D.C. Cir. 2016).

b.    Below, Professor Kalbers repeatedly invoked *Senate of Puerto Rico*—a decision in which the D.C. Circuit concluded that government disclosure of grand jury materials might not violate Rule 6(e). 823 F.2d at 574. But that case is inapposite because the grand jury materials there

-41-

were not identifiable as such. The Senate of Puerto Rico made a broad FOIA request for "over 1,000 pages of *non*-grand jury material," which also encompassed some grand jury exhibits. *Id.* at 581-583. The D.C. Circuit held that while "most, or even all," of the grand jury material might eventually be protected by Rule 6(e), DOJ's declarations at that juncture had not supplied sufficient information to justify the invocation of the rule. *Id.* at 584. In particular, the D.C. Circuit explained that the declarations had not stated that there was any "identifying information" on the grand jury documents, which were a small subset of the responsive documents. *Id.* at 583. The court thus reasoned that it might be impossible for the public "to determine *which* documents" responsive to a FOIA request were grand jury materials. *Id.* The court took as a given that if the documents were identifiable as grand jury materials, their disclosure would reveal a "protected aspect of the grand jury's investigation" and be barred under Rule 6(e). *Id.* at 584.

In contrast with the mixed-in exhibits in *Senate of Puerto Rico*, disclosing Volkswagen's subpoenaed records here would shine a spotlight on the "inner workings" of the grand jury. 823 F.2d at 583. Professor Kalbers seeks millions of documents that he and the public will know

were subpoenaed by the grand jury because they are identifiable as such. It is difficult to imagine a more blatant way to reveal the "direction of the [grand jury's] investigation." *Id.* at 582.

### D.  The District Court's Contrary Rule Is Wrong.

The special master's recommendation—adopted without any analysis by the district court—concluded that Rule 6(e) protects documents that are "directly associated with the grand jury process, such as affidavits and deposition transcripts." 1-ER-19-20. But the special master carved out from Rule 6(e) any documents that a subpoenaed party "created for purposes independent of grand jury investigations [and] have legitimate uses unrelated to the substance of the grand jury proceedings." 1-ER-20, 22. That unprecedented rule—which would exclude from Rule 6(e) almost all of the evidence procured through a grand jury's wide-reaching investigations—is wrong for at least four reasons.

1.  *First*, the special master's recommendation, adopted by the district court, conflicts with the text of Rule 6(e). On its face, Rule 6(e) protects information related to all aspects of grand jury proceedings, including investigations. As explained, the rule prohibits disclosure of any "*matter occurring before* the grand jury," not just documents "created

-43-

for" the grand jury, like declarations and transcripts. *See* Fed. R. Crim. P. 6(e)(2)(B) (emphasis added). There is simply no textual basis for any artificial distinction between documents that predate the grand jury's investigation and those that do not.

2. *Second*, the district court misconstrued this Court's precedent. This Court has already rejected the district court's cramped reading of Rule 6(e). It has explained that "matters occurring before the grand jury" include "information which would reveal . . . 'the strategy or direction of the investigation.'" *Standley*, 835 F.2d at 218. That standard comfortably encompasses the documentary evidence procured by the grand jury during its investigation.

In its recommendation, the special master reached the opposite conclusion by relying on this Court's decision in *Dynavac*. It emphasized that the subpoenaed documents here were "*created* for purposes independent of grand jury investigations," and "have legitimate uses unrelated to the substance of the grand jury proceedings." 1-ER-22 (quoting *Dynavac*, 6 F.3d at 1411). But *Dynavac*, which was not a FOIA case, does not support the special master's recommendation—it cuts the other way.

*Dynavac* illustrates the principle that private parties cannot use grand jury secrecy to avoid their *independent* discovery obligations. In *Dynavac*, the IRS subpoenaed business records from private parties who asserted that Rule 6(e) protected the requested records because those records had previously been produced under a grand jury subpoena. *Dynavac*, 6. F.3d at 1409-1410. This Court rejected that argument, explaining that the records were not "matter[s] occurring before the grand jury" because the "IRS ha[d] a legitimate interest in the documents as part of its authority to assess civil tax liabilities," and had subpoenaed the business records from private parties (as opposed to any person or entity involved in grand jury proceedings). *Id.* at 1414. In other words, the fact that the documents were not "created for" the grand jury in *Dynavac* was relevant only because the requesting party had an independent right to those documents, and there was no obvious link between the documents and the prior grand jury proceeding. *See id.*

By contrast, this Court has not considered relevant whether documents were "created for" the grand jury in the FOIA context. That is because the link to a grand jury is obvious where a FOIA requester directly seeks documents produced to the grand jury and held by federal

-45-

prosecutors pursuant to that proceeding. Under those circumstances—unlike where someone directs a subpoena at a private party without mention of the grand jury—a court need not find some *other* connection to the grand jury process, like the fact that the document was created for the grand jury. The direct request for grand jury materials is enough. As at least one district court in this Circuit has correctly recognized, for that reason reliance on cases "that address disclosure of grand jury materials outside of the FOIA context is misplaced." *McAtee*, 2016 WL 4250267, at *2.

*Dynavac* therefore does not support the district court's reading of the interplay between Rule 6(e) and FOIA because Professor Kalbers does *not* have any independent right to obtain Volkswagen's confidential business documents. Professor Kalbers and Volkswagen are not engaged in any civil litigation. Professor Kalbers is not, for example, seeking to enforce a legitimate discovery demand under Federal Rule of Civil Procedure 26. He attempts to use FOIA to do what Rule 6(e) prohibits: capitalize on the "existence of a grand jury proceeding" to "add[]" to his discovery rights—which, as against Volkswagen, are otherwise nonexistent. *SEC* v. *Dresser Indus., Inc.*, 628 F.2d 1368, 1384 (D.C. Cir.

1980).[5]   Indeed, Professor Kalbers has already used a one-page FOIA request to initiate nearly six years of litigation that has required thousands of attorney hours at great expense to both Volkswagen and DOJ.

The special master's reasoning also does not comport with *Dynavac* for a second reason.  In *Dynavac* this Court held that, regardless of the circumstances, Rule 6(e) would bar disclosure if a document's revelation would "compromise the integrity of the grand jury process."  6 F.3d at 1412.  For example, this Court observed that "learning *which* documents

---

[5]     Other courts of appeals and district courts have acknowledged the same distinction.  *See, e.g.*, *Dresser Indus., Inc.*, 628 F.2d at 1384 (Rule 6(e) did not "insulate" documents from SEC subpoena where the SEC sought documents "directly from" that party); *In re Grand Jury Proceedings.*, 851 F.2d at 867 (person seeking documents subpoenaed by grand jury must establish that "disclosure would be otherwise available by civil discovery and would not reveal the nature, scope, or direction of the grand jury inquiry"); *John Doe Corp.* v. *John Doe Agency*, 850 F.2d 105, 109 (2d Cir. 1988) (document "that is otherwise available to the public does not become confidential simply because it [was once] before a grand jury"), *rev'd on other grounds*, 493 U.S. 146 (1989); *Jud. Watch, Inc.*, 214 F. Supp. 3d at 55 (distinguishing between cases involving document requests "coincidental" to grand jury investigations, and FOIA requests to agencies that "possess[] information directly resulting from a grand jury investigation"); *McAtee*, 2016 WL 4250267, at *2 (distinguishing between disclosure of "records [that] are *also* the subject of grand jury investigations" and disclosure of records in the government's possession solely "*as a result of* a grand jury investigation") (emphasis added).

were subpoenaed by the grand jury . . . may disclose the grand jury's deliberative process," and therefore be barred by Rule 6(e).  *Id.* at 1412 n.2.  Here, because Professor Kalbers seeks *identifiable* grand jury materials through FOIA, their disclosure would reveal which documents were subpoenaed and therefore the "direction" of the grand jury's investigation.  *Standley*, 835 F.2d at 218.  So even if Professor Kalbers did have an independent right to Volkswagen's confidential business records, DOJ still could not disclose them consistent with Rule 6(e).

3.  *Third*, the district court's rule conflicts with decisions of the Supreme Court and several courts of appeals.  The district court would limit Rule 6(e) to the narrow tranche of materials *created for* the grand jury.  But the Supreme Court has considered at length which documents "the grand jury *subpoenaed*" fall within Rule 6(e)'s exceptions—which necessarily means that subpoenaed documents come within Rule 6(e)'s purview in the first place.  *Sells Eng'g*, 463 U.S. at 422 (emphasis added).  The district court's rule would read most subpoenaed documents out of Rule 6(e) entirely.

In addition, the decisions of at least three courts of appeals squarely conflict with the district court's rule.  The Second, Third, and D.C.

Circuits have held in the FOIA context specifically that Rule 6(e) protects documents subpoenaed by a grand jury, *see supra*, pp. 31-32, because their revelation "would publicly reveal the scope and secret aspects of the grand jury investigation." *Grynberg*, 758 Fed. Appx. at 164. That is true regardless of whether the documents were "created for" the grand jury, as few subpoenaed documents are. *See also In re Grand Jury Proceedings*, 851 F.2d at 866 ("[C]onfidential documentary information," is presumed to be "just as much" a "matter[] occurring before the grand jury . . . as testimony before the grand jury."). Indeed, in white-collar cases, grand jury investigations "consist[] almost entirely of documents" that "predate the convening of a grand jury"—and thus under the district court's rule "could never be matters before the grand jury subject to Rule 6(e)['s] protections." *McQueen*, 179 F.R.D. at 529 n.17.

Although the special master relied on a First Circuit decision in reaching the opposite result, the First Circuit has not adopted a rule that Rule 6(e) protects only materials made for the grand jury. 1-ER-19-20 (quoting *Church of Scientology Int'l* v. *DOJ*, 30 F.3d 224, 235 (1st Cir.

1994)).[6]  In *Church of Scientology*, the First Circuit "distinguish[ed]" documents "directly associated with the grand jury process, such as affidavits and deposition transcripts," from documents "created for purposes independent of grand jury investigations." 30 F.3d at 235.  The court explained that documents in the former category (*i.e.*, grand jury declarations and transcripts) are *always* exempt from disclosure under FOIA.  *Id.*  It further explained that documents in the latter category (*i.e.*, documents "created for purposes independent of grand jury investigations") can also be exempt from disclosure, so long as the government provides "some basis for a claim that releasing them will implicate the secrecy concerns protected by Rule 6(e)."  *Id.*  Here, DOJ has provided an ample "basis" for invoking Rule 6(e), and nothing in *Church of Scientology* suggests otherwise.

---

[6]    The special master purported to quote the Second Circuit's opinion in *John Doe Corp.* v. *John Doe Agency*, 850 F.2d 105 (2d Cir. 1988), for the proposition that "courts consider whether the materials are 'directly associated with the grand jury process, such as affidavits and deposition transcripts' or whether they are "from business records or similar documents 'created for purposes independent of grand jury investigations, which have legitimate uses unrelated to the substance of the grand jury proceedings.'"  But the quoted language is from *Church of Scientology*, not *John Doe*.  *See* 1-ER-16, 21-22.

4. *Fourth*, as a practical matter, the district court's interpretation of Rule 6(e) and FOIA would place grand jury investigations in a fishbowl, with disastrous effects for the functioning of the grand jury and for investigated parties. That is because under the district court's wide-ranging rule, *any* preexisting documents or information subpoenaed by a grand jury is unprotected by Rule 6(e) and therefore retrievable by *any* person through a FOIA request. As a result, witnesses and targets of grand jury investigations would produce materials at their peril and would have strong incentives to limit their voluntary production of documents and resist or narrowly construe grand jury subpoenas.

The district court's expansive reading of FOIA would thereby undermine all the important interests grand jury secrecy serves. This case is emblematic. Professor Kalbers—a complete stranger to Volkswagen sitting more than 2,000 miles from the grand jury—seeks six million records that Volkswagen produced to DOJ under assurances of confidentiality. Requiring DOJ to disclose what it learned from Volkswagen would vitiate Volkswagen's reasonable expectations of privacy. And it would put down a dramatic new marker that every other

source of information to a grand jury should not expect its information, or perhaps even its identity, to remain confidential for long. Few if any private parties would fully cooperate and produce documents in response to a grand jury subpoena if they knew it would lead to years of ensuing litigation and DOJ would be required to disclose those documents to any FOIA requester who bothers to ask for them.

\*    \*    \*

Grand juries are empaneled every day and armed with broad authority to compel production of enormous amounts of confidential material. Rule 6(e) promotes fairness for those who are subject to the grand jury's compulsion, by guaranteeing that the vast swaths of information subpoenaed will be kept confidential. Left uncorrected, the district court's erroneous decision would make almost all this confidential material available to any person who submits a FOIA request. This Court should not countenance Professor Kalbers's attempt to turn secret grand jury proceedings into a mechanism for public disclosure of confidential business records.

## CONCLUSION

For the forgoing reasons, this Court should reverse the judgment below.

/s/ *Robert J. Giuffra, Jr.*
ROBERT J. GIUFFRA, JR.
SUHANA S. HAN
ANDREW J. FINN
LESLIE B. ARFFA
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

MORGAN L. RATNER
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Suite 700
Washington, DC 20006
(202) 956-7500

*Attorneys for Intervenor-Appellant*
*Volkswagen AG*

May 20, 2024

## FILER'S ATTESTATION

I, Robert J. Giuffra, Jr., certify that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

## STATEMENT OF RELATED CASES

Volkswagen AG is aware of no related cases pending in this Court within the meaning of Ninth Circuit Rule 28-2.6.

Date:  May 20, 2024

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:  May 20, 2024

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 24-1048; 24-1477 |

I am the attorney or self-represented party.

**This brief contains** | 9,446 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated |          | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Robert J. Giuffra, Jr. | **Date** | 5/20/2024 |

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*